189 So.2d 230 (1966)
George K. HAJDU, Appellant,
v.
The STATE of Florida, Appellee.
No. 65-598.
District Court of Appeal of Florida. Third District.
August 2, 1966.
Rehearing Denied August 29, 1966.
*231 Hoffman & St. Jean, Miami Beach, for appellant.
Earl Faircloth, Atty. Gen., and Herbert P. Benn, First Asst. Atty. Gen., for appellee.
Before HENDRY, C.J., and BARKDULL and SWANN, JJ.
BARKDULL, Judge.
The appellant seeks review of a jury verdict finding him guilty of the unlawful practice of medicine, judgment and sentence thereon.
On August 21, 1964, one Claire White [an employee of a private detective agency which was working for the State Board of Medical Examiners] visited the appellant pursuant to orders from her employer. She carried a radio transmitter secreted in her purse. She told the appellant she thought she had cancer and he recommended her to a licensed physician. Thereafter, she made another appointment and again visited the appellant, carrying the radio transmitter in her purse. At this time she informed him she was suffering from an unwanted pregnancy. After some discussion regarding the situation, the appellant allegedly examined her and informed her she was, in fact, pregnant. During this visit and examination, Mrs. White's employer [Behrens] was stationed outside the appellant's apartment listening to the conversation over a radio receiver. An Information was filed against the appellant, charging him with unlawfully engaging in the practice of medicine by performing an internal pelvic examination upon Claire White while not holding a license from the State Board of Medical Examiners, in violation of §§ 458.13, 458.15, Fla. Stat., F.S.A. A jury trial was held on the charges, and the private detective [Behrens] was permitted to testify to the conversation he had heard broadcast from the secret transmitter to his receiver. This appeal ensued.
The appellant contends that the trial court erred in denying his motion to quash the Information, in that it failed to charge him with the violation of any law in Florida in that it was vague, indefinite and uncertain. We do not find this point to be well taken. See: Sweat v. Pettis, 158 Fla. 104, 27 So.2d 827; Gibbs v. Mayo, Fla. 1955, 81 So.2d 739; Drozewski v. State, Fla. 1955, 84 So.2d 329; State v. Brown, Fla.App. 1958, 101 So.2d 599.
The appellant also contends the trial court erred in denying his motion for mistrial, on the grounds that the use of the word "abortion" by the prosecution on voir dire and by a State witness in response to a question was prejudicial to him, thereby constituting grounds for a mistrial. We find no merit in this contention, particularly in light of the ultimate determination of this appeal; although it would appear that it would have been the better practice for the State not to have used the word "abortion" on voir dire examination.
The appellant next contends that error was committed by the trial court in refusing to instruct the jury concerning the law of entrapment, in view of the evidence adduced by an investigator for the State Board of Medical Examiners. This point appears to be well taken, in light of the evidence that was introduced. See: Peters v. Brown, Fla. 1951, 55 So.2d 334; Carter v. State, Fla. 1963, 155 So.2d 787; Ivory v. State, Fla.App. 1965, 173 So.2d 759.
Further, the appellant contends the trial court erred in failing to suppress testimony obtained through use of the secret radio transmitter, on the grounds that said *232 evidence was obtained in violation of his State and Federal constitutional rights. It appears that this point is very well taken, and permitting the person outside the appellant's premises to relate the conversation he heard should not have been allowed, and it was prejudicial error for the trial court to permit its introduction. The use of such surreptitiously obtained information violates the right of privacy preserved by the Fourth Amendment of the United States Constitution, which is applicable to State proceedings [see: State v. Levenson, Fla. 1963, 151 So.2d 283; Hicks v. State, Fla.App. 1963, 156 So.2d 22; Mapp v. State of Ohio, 81 S.Ct. 1684, 367 U.S. 643, 6 L.Ed.2d 1081; United States ex rel. Manduchi v. Tracy, E.D.Penn. 1964, 233 F. Supp. 423] and violates § 22 of the Declaration of Rights of the Florida Constitution, F.S.A.
The evidence was obtained by the use of a secret transmitter in the home of the defendant, which broadcast his comments to a person outside of his home who took the stand at the trial of this cause and testified as to the contents of the conversation. To condone this type of activity by any witness would be reprehensible, but it is particularly so when the activity was engaged in by a paid private investigator of a State agency.
The entry into private premises by an agent of the Government by stealth, fraud and deceit has been often condemned. Perhaps the best discussion of the law is cited in Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647, when Justice Clarke of the Supreme Court of the United States said:
* * * * * *
"The prohibition of the Fourth Amendment is against all unreasonable searches and seizures and if for a government officer to obtain entrance to a man's house or office by force or by an illegal threat or show of force, amounting to coercion, and then to search for and seize his private papers would be an unreasonable and therefore a prohibited search and seizure, as it certainly would be, it is impossible to successfully contend that a like search and seizure would be a reasonable one if only admission were obtained by stealth instead of by force or coercion. The security and privacy of the home or office and of the papers of the owner would be as much invaded and the search and seizure would be as much against his will in the one case as in the other and it must therefore be regarded as equally in violation of his constitutional rights.
"* * * we cannot doubt that such decisions as there are in conflict with this conclusion are unsound, and that, whether entrance to the home or office of a person suspected of crime be obtained by a representative of any branch or subdivision of the government of the United States by stealth, or through social acquaintance, or in the guise of a business call, and whether the owner be present or not when he enters, any search and seizure subsequently and secretly made in his absence, falls within the scope of the prohibition of the Fourth Amendment. * * *"
* * * * * *
In Silverman v. United States, infra [the famous "spike mike" case], the Supreme Court of the United States, through Justice Stewart, observed:
* * * * * *
"The Fourth Amendment, and the personal rights which it secures, have a long history. At the very core stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion. * * *
* * * * * *

"This Court has never held that a federal officer may without warrant and without consent physically entrench into a man's office or home, there secretly observe or listen, and relate at the man's subsequent criminal trial what was seen or heard." [emphasis added]
* * * * * *
In Cullins v. Wainwright, 5th Cir.1964, 328 F.2d 481, it was held that evidence procured *233 by means of an electronic eavesdropping device was inadmissible as a violation of the Fourth Amendment to the Constitution of the United States. In that case, a microphone was lowered in an air shaft to a grille in defendant's apartment, which the court held to constitute an invasion of privacy.
In Clinton v. Virginia, 377 U.S. 158, 84 S.Ct. 1186, 12 L.Ed.2d 213, a microphone was used by police officers in the premises of the defendant. The Supreme Court of the United States held that this was a trespass and the evidence obtained thereby was suppressed, thus following the ruling in Silverman v. United States, 365 U.S. 505, 81 S.Ct. 679, 5 L.Ed.2d 734.
Again, in United States v. Stone, N.D. Tex. 1964, 232 F. Supp. 396, an electronic device consisting of a wireless transmitter was placed in a public telephone booth on a public street. The defendant entered the booth and his conversation regarding a wager was transmitted to an agent in an automobile some one hundred feet away. The circuit court of appeals excluded the evidence upon the ground that the microphone was a physical trespass into the defendant's privacy and the recording of his conversation violated the Fourth Amendment to the Constitution of the United States.[1]
The same is true where the paid investigator brought [into appellant's apartment] a purse in which a broadcasting device was secreted, so that a private investigator for the State Board of Medical Examiners could overhear the conversation. The lower court erred in refusing to suppress this evidence.
The State relies upon the opinion of this court in Gomien v. State, Fla.App. 1965, 172 So.2d 511. This reliance is misplaced. The Gomien opinion and authorities cited therein were primarily concerned with the authenticity of a transcript of a conversation. These authorities are not applicable in the instant case, because the alleged conversations were never transcribed. In Gomien, the witness testifying was the person who caused the conversation to be recorded after having been invited into the defendant's premises. In the instant case, the objectionable testimony was given by a person *234 not within the defendant's premises and by one to whom an invitation had not been extended. The person in the instant case who is analogous to the witness in the Gomien case was the witness White, and she was permitted to testify as to what transpired in the appellant's premises. And, if she had recorded the conversation, then upon proper authentication [if otherwise admissible] any such transcription would have been admissible under Gomien v. State, supra; Lopez v. United States, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462, and other authorities.
No matter how laudable may have been the aim of the State agency in preventing the unauthorized practice of medicine, the validity of the result cannot justify the use of unlawful means to obtain the ultimate goal. Members of the public are called upon to observe all laws and they have a right to expect that State authorities will do likewise before invading their homes and disturbing their constitutional right to privacy.
Therefore, for the reasons stated, the verdict, adjudication of guilt and sentence here under review be and the same is hereby set aside and reversed. The defendant and this cause is remanded to the trial court for the purposes of a new trial.
Reversed and remanded, with directions.
NOTES
[1] In this connection, see and compare the opinion of Judge Donald Carroll of the First District Court of Appeal of Florida in Griffith v. State, Fla.App. 1959, 111 So.2d 282, wherein he had the following to say concerning wire tapping:

* * * * * *
"* * * we are so deeply concerned with the potential dangers of wiretapping to our American way of life, to our sacred liberties and our democratic society, and to our concept of fair play, that we have reached the further conclusion that wiretapping violates Sections 12 and 22 of the Declaration of Rights of the Florida Constitution, F.S.A. Section 12 of the Declaration of Rights provides, in part:
"`No person shall be * * * compelled in any criminal case to be a witness against himself * * *.'
Section 22 of the Declaration of Rights provides:
"`The right of the people to be secure in their persons, houses, papers and effects against unreasonable seizures and searches, shall not be violated and no warrants issued, but upon probably cause, supported by oath or affirmation, particularly describing the place or places to be searched and the person or persons, and thing or things to be seized.'
"Our reasoning behind this conclusion follows along the line of the reasoning of the dissenting opinion in the case of Olmstead v. United States, 277 U.S. 438, 48 S.St. 564, 72 L.Ed. 944. Paraphrasing this reasoning, we think that tapping telephone wires and listening in by law enforcement officers constitutes a search for evidence and hence comes within the purview of the Declaration of Rights, establishing the rights of the people of this state to be secure in their persons, houses, papers, and effects, against unreasonable searches for evidence by law enforcement officers through the device of tapping telephone wires. We further hold that the use as evidence of conversations overheard through wiretapping in effect compels a defendant in a criminal case to be a witness against himself, in violation of Section 12 of the Declaration of Rights."
* * * * *
See, also: Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246.