371 So.2d 1047 (1979)
Julian F. SARMIENTO, Appellant,
v.
The STATE of Florida, Appellee.
No. 78-455.
District Court of Appeal of Florida, Third District.
April 17, 1979.
Rehearing Denied June 8, 1979.
*1049 Alvin E. Entin and Ronald A. Dion, Miami, Manuel W. James, Key West, for appellant.
Jim Smith, Atty. Gen. and Paul Mendelson, Asst. Atty. Gen., for appellee.
Before HENDRY and HUBBART, JJ., and CHARLES CARROLL (Ret.), Associate Judge.
HUBBART, Judge.
This is a criminal prosecution for unlawful sale of heroin in which the defendant was convicted as charged and sentenced in the Monroe County Circuit Court. The defendant appeals.

I
The central issue presented for review is whether the warrantless electronic eavesdropping by state agents of a conversation between the defendant and an undercover police officer in the privacy of the defendant's home [under circumstances where it was practicable for such agents to have applied for and obtained a prior intercept warrant] constitutes an unreasonable interception of the defendant's private communications in violation of Article I, Section 12, of the Florida Constitution. We hold that the above electronic eavesdropping constitutes such an unreasonable interception and reverse.

A
The facts pertaining to the above issue are as follows. On February 14, 1978, at approximately 5:00-6:00 p.m. Detective Charles Hitchins of the Monroe County Sheriff's Office working as an undercover narcotics officer was at a bar in The Raceway Inn, in Key West, Florida. Also present in the bar was the defendant Julian Sarmiento and a young girl reputed to be living with him. Detective Hitchins had a conversation at the bar with the girl in question to the effect that he was interested in purchasing some heroin. The girl thereupon left and had a conversation with the defendant outside the presence of the detective. She later returned to inform Detective Hitchins that he could make a buy of heroin at the defendant's house trailer which was located next door at 10:30 p.m. that night. Arrangements were made to meet at that location and time.
Detective Hitchins thereafter notified his superior officer, Detective Joseph Valdez of the Monroe County Sheriff's Office, of the proposed narcotics purchase who in turn alerted other law enforcement officers. Detective Hitchins was thereupon equipped with a hidden electronic "body bug" for the purpose of allowing the surveilling police officers to monitor any conversation Detective Hitchins might have with the defendant in the defendant's house trailer that night. No effort was made by any police officer connected with this case to apply for an intercept warrant for this electronic eavesdropping.
Detective Hitchins later went to the defendant's house trailer as planned with a confidential informer and made a purchase of heroin from the defendant. Several law enforcement officers were stationed nearby outside the house trailer pursuant to a prearranged police plan. Two of these officers, Lt. Robert Santana and Sgt. Carol Key of the Key West Police Department, monitored and overheard certain conversations inside the house trailer by means of the electronic "body bug" worn by Detective Hitchins. The conversations which they overheard in the house trailer tended to establish that the defendant had participated in selling a quantity of heroin to Detective Hitchins.
At trial, the defendant objected to and moved to suppress the testimony of Lt. Santana and Sgt. Key as to what they heard on the electronic monitor relating to *1050 the conversations between the defendant and Detective Hitchins in the defendant's house trailer. He argued that such evidence was inadmissible as constituting an unreasonable interception of private communications because of the failure of the police to obtain a prior intercept warrant for the electronic surveillance in this case. The trial court denied the motion.
The defendant was convicted as charged and sentenced to ten years in the state penitentiary. This appeal follows.

B
Article I, Section 12, of the Florida Constitution provides in relevant part as follows:
"The right of the people to be secure in their persons, houses, papers and effects against ... the unreasonable interception of private communications by any means, shall not be violated. No warrant shall be issued except upon probable cause, supported by affidavit, particularly describing the place or places to be searched, ... the communication to be intercepted, and the nature of evidence to be obtained. Articles or information obtained in violation of this right shall not be admissible in evidence."
Central to invoking the protection of this constitutional right is a determination that there has been an "interception of private communications" by government agents. If so, a second determination must be made as to whether such interception was "unreasonable." If both prerequisites are met, the above constitutional right has been violated and any evidence obtained in violation of such right is inadmissible in evidence against the victim of the unreasonable interception.

1
Our first task, then, is to determine whether there has been an "interception of private communications" of the defendant by government agents in this case. All agree that the defendant's private communications in his home were overheard through an electronic listening device by government agents. The parties sharply disagree, however, as to whether such electronic eavesdropping can be termed an "interception" in the constitutional sense.
We take it that to "intercept" a private communication, government agents must necessarily invade one's reasonable expectation of privacy for such is the primary interest which this constitutional right was designed to shield. Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); Huffer v. State, 344 So.2d 1332 (Fla. 2d DCA 1977). Moreover, a person, such as the defendant herein, has the highest reasonable expectation of privacy when he is in his home for it is this sanctuary of privacy, above all else, that this constitutional privilege was designed to protect. Silverman v. United States, 365 U.S. 505, 511, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961); Brown v. State, 62 So.2d 348, 349 (Fla. 1952); Church v. State, 151 Fla. 24, 9 So.2d 164, 167 (1942); Jackson v. State, 87 Fla. 262, 99 So. 548, 549 (1924). We would not be true to the spirit or intent of this constitutional guarantee or its historical antecedents were we to hold otherwise.
In the instant case, it is clear that the defendant had a private conversation in the privacy of his home with an undercover police officer. The defendant without question assumed the risk that this officer might betray the defendant's trust and reveal, as he did, the contents of this conversation to the outside world. That, in our view, is a reasonable risk which any person assumes when he talks to anyone as the speaker has it within his power to gauge whether to take such a risk based on his personal assessment of the person to whom he is talking. As such, there was no invasion of the defendant's reasonable expectation of privacy [and thus no "interception" in the constitutional sense] for the officer to listen to and later testify, as he did, to the content of the defendant's conversation in the home. Hoffa v. United States, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966); Lewis v. United States, 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966).
*1051 In our view, however, the defendant had a reasonable expectation of privacy that no one else was listening to his conversation in the home besides the undercover police officer and the other people present therein. We are unwilling to impose upon our citizens the risk of assuming that the uninvited ear of the state is an unseen and unknown listener to every private conversation which they have in their homes. That is too much for a proud and free people to tolerate without taking a long step down the totalitarian road. The home is the one place to which we can retreat, relax, and express ourselves as human beings without fear that an official record is being made of what we say by unknown government agents at their unfettered discretion. It is here that we most enjoy the serenity and spontaneity of private life with at times its serious, quiet, intimate, free-wheeling, defiant, frivolous, and even profane discourse which liberates daily life but which few, if any, would want spread on the public record. No free society can long remain free which places such private conversations in the home entirely beyond any constitutional protection. Silverman v. United States, 365 U.S. 505, 511, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961); United States v. White, 401 U.S. 745, 468-483, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971) (Harlan, J. dissenting).
It is for these reasons that this court in Hajdu v. State, 189 So.2d 230 (Fla. 3d DCA 1966), held that it was a violation of the Fourth Amendment to the United States Constitution and Section 22 of the Declaration of Rights of the Florida Constitution [the predecessor to Article I, Section 12, Fla. Const.] for government agents to electronically eavesdrop without a warrant on a private conversation between the defendant and an undercover police officer in the privacy of the defendant's home and thereafter to testify in court as to what they overheard. We reaffirm and follow that decision today in holding that such eavesdropping constitutes an "interception" of the defendant's private communications within the meaning of Article I, Section 12, of the Florida Constitution.
The state argues in effect that Hajdu is no longer good law because the subsequent passage of Sections 934.03(2)(c),[1] 934.08(3),[2] Florida Statutes (1977) impliedly overruled this decision by authorizing that electronic eavesdropping conducted in this case. We disagree. These statutes by their express terms do not apply to electronic eavesdropping in the home, as here, and cannot be read to overrule or supersede Hajdu. Moreover, it is axiomatic that a state statute cannot constitutionally alter a prior court decision interpreting the state constitution. We therefore decline the state's invitation to interpret these statutes to apply to the home so as to overrule Hajdu. Corn v. State, 332 So.2d 4, 8 (Fla. 1976). That decision was sound when rendered, has not been overruled by the above statutes, and is still good law.

2
Our next task is to determine whether the interception of the defendant's private communications in his home was "unreasonable." It is axiomatic that to intercept private communications whether in the home or elsewhere by invading a person's reasonable expectation of privacy does not alone amount to a violation of Article I, *1052 Section 12, of the Florida Constitution. As with traditional searches and seizures, it is not all interceptions of private communications which are forbidden by the constitution, but only "unreasonable" interceptions. See Elkins v. United States, 364 U.S. 206, 222, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960).
In this regard, the law is clear that it is per se "unreasonable" for government agents to intercept private communications by electronic means without first obtaining a valid intercept warrant if under the circumstances it would have been practicable for the agents to have obtained such a warrant. United States v. United States District Court, 407 U.S. 297, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972); Tollett v. State, 272 So.2d 490 (Fla. 1973); State v. Muscara, 334 So.2d 167 (Fla. 3d DCA 1976). Article I, Section 12, of the Florida Constitution lays out the constitutional requirements for such intercept warrants which are in turn implemented by Sections 934.07, 934.09, Florida Statutes (1977). Indeed, where a valid intercept warrant has been obtained, electronic interceptions of private communications have been sustained as reasonable. Osborn v. United States, 385 U.S. 323, 87 S.Ct. 429, 17 L.Ed.2d 394 (1966).
In the instant case, the electronic interception employed by the police officers herein was accomplished without benefit of a prior intercept warrant. The state makes no contention that it was not practicable under the circumstances for the police to have applied for and obtained such a warrant. Indeed, the police had between 4-5 hours to do so between Detective Hitchins' meeting at The Raceway Inn and the ultimate meeting in the defendant's house trailer. The failure to obtain such a warrant under these circumstances makes the electronic interception herein "unreasonable" within the meaning of Article I, Section 12, of the Florida Constitution. State v. Muscara, 334 So.2d 167 (Fla. 3d DCA 1976).
The trial court accordingly committed reversible error in denying the defendant's motion to suppress the testimony of Lt. Santana and Sgt. Key who electronically eavesdropped on the defendant's private conversations and testified at trial as to the content thereof. The conviction herein must be reversed and the cause remanded for a new trial.

II
In view of our disposition of this case, it is unnecessary to consider the defendant's Richardson violation contention as the point is unlikely to arise upon retrial. The defendant's final contention, however, raises an issue which may arise upon retrial and we therefore must reach it.
In our view, the trial court committed reversible error in improperly restricting the defendant's cross-examination of Detective Charles Hitchins by precluding the defendant from inquiring into a recent criminal investigation of the detective by the state. This result is not changed by the fact that the Monroe County Grand Jury returned a no true bill against the detective in such investigation as it is the defendant's contention that the charges were dropped as part of an agreement with the state that the detective would testify against the defendant in this case. The defendant is entitled to inquire into such matters before the jury in an effort to impeach Detective Charles Hitchins' testimony as a witness. Stripling v. State, 349 So.2d 187, 191 (Fla. 3d DCA 1977); Morrell v. State, 297 So.2d 579 (Fla. 1st DCA 1974).
The judgment of conviction and sentence entered against the defendant herein is reversed and the cause is remanded to the trial court for a new trial to be conducted in conformance with the views expressed in this opinion.
Reversed and remanded.

ON MOTION FOR REHEARING
Before HENDRY and HUBBART, JJ., and CHARLES CARROLL (Ret.), Associate Judge.
PER CURIAM.
The state has filed a motion for rehearing in this cause raising as a ground *1053 therefor that the court overlooked or failed to consider that the defendant did not file a written pre-trial motion to suppress in the trial court and that the failure to do so was sufficient basis for the trial court to deny the motion. That argument, however, was never raised by the state either in its main brief or on oral argument in this cause and was in no way overlooked by this court. It cannot, therefore, be raised for the first time on a motion for rehearing. Nelson v. Selden Cypress Door Co., 78 Fla. 203, 83 So. 286 (1919); Cartee v. The Florida Department of Health & Rehabilitative Services, 354 So.2d 81, 83 (Fla. 1st DCA 1977); Price Wise Buying Group v. Nuzum, 343 So.2d 115, 117 (Fla. 1st DCA 1977).
Moreover, our review of the record reveals that the trial court properly entertained and heard the defendant's motion to suppress at the time of trial. Davis v. State, 226 So.2d 257 (Fla. 2d DCA 1969); Fla.R.Crim.P. 3.190(h)(4). The state did not object to or contest the defendant's right to make this motion in the trial court. It is too late now for the state to raise the issue.
We have considered the other grounds urged on the motion for rehearing and find them to be without merit. The motion for rehearing is, accordingly, denied.
NOTES
[1] "It is lawful under this chapter for a law enforcement officer or a person acting under the direction of a law enforcement officer to intercept a wire or oral communication when such person is a party to the communication or one of the parties to the communication has given prior consent to such interception and the purpose of such interception is to obtain evidence of a criminal act." § 934.03(2)(c), Fla. Stat. (1977).
[2] "Any person who has received, by any means authorized by this chapter, any information concerning a wire or oral communication or evidence derived therefrom intercepted in accordance with the provisions of this chapter may disclose the contents of that communication or such derivative evidence while giving testimony under oath or affirmation in any criminal proceeding in any court of the state or of the United States in any grand jury proceedings, or in any investigation or proceeding in connection with the judicial qualifications commission, if such testimony is otherwise admissible." § 934.08(3), Fla. Stat. (1977).