484 So.2d 1250 (1985)
SAG HARBOUR MARINE, INC., Appellant,
v.
Kenneth FICKETT and Rebecca Fickett, d/b/a Mirage Manufacturing, Inc., Appellees.
No. AT-376.
District Court of Appeal of Florida, First District.
July 18, 1985.
On Motion for Rehearing March 20, 1986.
N. Albert Bacharach, Jr., Gainesville, for appellant.
Kenneth E. Brooten, Jr., Gainesville, for appellees.
*1251 ZEHMER, Judge.
This is an appeal from a final judgment dissolving a prejudgment writ of replevin, granting possession of the property to appellees and awarding appellees damages, costs, and attorney's fees. Sag Harbour raises four issues: (1) The award of attorney's fees was not proper under section 78.21, Florida Statutes (1981); (2) appellant is the prevailing party and entitled to recover its costs under section 78.18, Florida Statutes (1981), because appellees abandoned any claim of possession to three of the four items of property involved in this action; (3) the trial court erred in finding appellees entitled to possession of the property; and (4) the trial court erred in placing the value of the property, when seized, at the unpaid balance of the purchase price plus shipping costs rather than its true market value. We reverse.
A thorough review of the record reveals the following essential facts. Appellant, Sag Harbour Marine, Inc., a closely held corporation, is in the business of designing and brokering yachts. Appellees, Kenneth and Rebecca Fickett, doing business as Mirage Manufacturing, Inc., are in the business of constructing fiberglass sailboats. The Ficketts and Deborah Berman, president and part owner of Sag Harbour, met at a boat show in 1980 and subsequently entered into an agreement for Mirage to construct a sailboat pursuant to a design furnished by Sag Harbour. This case arose out of a dispute between the parties over the manufacture of a second sailboat which was to be displayed and sold at the Annapolis Boat Show in October 1981.
The agreement between the parties is essentially set forth in a letter from Berman to the Ficketts dated September 18, 1981. That letter states that Sag Harbour "will remit $7500 to Mirage Manufacturing before October 14, 1981 to cover your cost in building one `complete as standard' GOLDEN TOPAZ 7.7" meter sailboat with an inboard diesel engine. The letter further provided "that diesel inboard production boats from the molds I [Sag Harbour] now own, again `complete as standard,' will be completed for a total cost of $16,000 fob Gainesville, FL." Finally, the letter states that Sag Harbour has made arrangements for Mirage to show "this second GOLDEN TOPAZ in the water at the Annapolis Boat Show as part of the Mirage Manufacturing exhibit" and that Sag Harbour "will ensure that the balance owed [Mirage] of $8,500 plus freight from Gainesville to Annapolis will be paid immediately when the boat is sold." A paragraph added to the letter on September 19 or 20 and initialed by Berman and Fickett stated that Sag Harbour would pay "the cost of the Annapolis Boat Show Space which Golden Topaz will be displayed in; approximately $650" and that Sag Harbour will be responsible to Mirage "for the reimbursement of launching and commissioning expenses for the Show."
The Golden Topaz was taken, along with two other boats manufactured by Mirage, to the Annapolis Boat Show on October 13. The Golden Topaz was not finished. The mast was lashed to the deck, the portholes were covered with masking tape, deck hardware was missing, and the hull had not been painted. Kenneth Fickett assured Sag Harbour that he would finish the boat the next day, but in fact the boat remained uncompleted for the remainder of the show. The Ficketts and Sag Harbour fell into a dispute over who should have possession of the boat for the purpose of completing it. Sag Harbour took the position that it had paid the $7,500 due to cover building costs, held title to the boat, and was entitled to complete it and charge the costs against the remaining amount due Mirage when the boat was sold. Fickett contended that Mirage, as manufacturer, was entitled to possession for the purpose of completing the boat. When Fickett attempted to remove the boat from the slip at the Annapolis show, Berman refused to allow him to do so. Fickett tried to have a police officer remove Berman from the boat, but the policeman refused.
The next day, Fickett arrived with two Maryland state troopers, who asked to see Sag Harbour's proof of ownership. Berman showed the officers a manufacturer's *1252 statement of origin (MSO), which the Ficketts, doing business as Mirage Manufacturing, had issued to Sag Harbour. The serial number of the engine was on the MSO, but the serial number had not been permanently impressed into the hull, as required. The Ficketts asserted that Sag Harbour's MSO covered another Golden Topaz and that Mirage was owner of this boat. An attorney for Sag Harbour assured the Maryland officers that Sag Harbour would not attempt to move the boat, and the officers assured the attorney that the Ficketts would not be allowed to move the boat. Thereafter, Berman returned to New York, leaving the matter in the hands of Sag Harbour's attorney.
On October 24, the Annapolis Harbour Police apprehended Kenneth and Rebecca Fickett as they left the harbor aboard the Golden Topaz. Berman was contacted and, when asked if she wished to press charges against the Ficketts, replied in the affirmative. When apprehended, Kenneth Fickett exhibited an MSO showing that his wife, Rebecca, was owner of the Golden Topaz. Rebecca Fickett testified that she had typed this MSO in Maryland and had backdated it to September 1, 1981, for the sole purpose of gaining possession of the Golden Topaz. When confronted with this belatedly prepared MSO, the police agreed not to execute the criminal warrant pending a conference with the Ficketts and their attorney. Meanwhile, the boat was tied up at the police dock overnight and then removed to the private dock where it had been previously moored. Kenneth Fickett failed to attend the conference with the police, and on October 26, it was discovered that the Golden Topaz was not in its slip. Fickett had removed the boat on the strength of the MSO prepared by his wife and returned the boat to Gainesville. Upon learning that the boat was in Florida, Sag Harbour commenced this action for replevin.
After filing its complaint, Sag Harbour obtained an order of prejudgment replevin from the circuit court. A deputy sheriff accompanied a representative of Sag Harbour to Mirage Manufacturing for the purpose of taking possession of the boat and noted that the serial numbers on the engine and on Sag Harbour's MSO did not match in that the last character of the serial number on the engine read "B" instead of "C," as shown on Sag Harbour's documents. Consequently, Sag Harbour filed an amended complaint and the trial court issued a second order of prejudgment replevin bearing the correct serial number, which had been scratched on the engine. The boat, the forms, and the molds used in the manufacture of the boat were placed in the possession of Sag Harbour's representative. The trial testimony indicated that no further work toward completion of the boat had been performed and that the boat was in substantially the same condition it had been at Annapolis.
After Sag Harbour posted a replevin bond and obtained possession under the prejudgment writ of replevin, the Ficketts did not post a forthcoming bond or attempt to dissolve the prejudgment writ for the purpose of taking possession of the property pending settlement of the dispute. The Ficketts filed an answer to the second amended complaint, generally denying that Sag Harbour was entitled to possession and asserting in a counterclaim that appellees were due the contract amount, plus expenses incurred in showing the Golden Topaz at the Annapolis Boat Show. After a nonjury trial, the circuit court ruled that the Ficketts were entitled to possession of the boat until it was sold and the balance due on the purchase price was paid. The court further ordered that the Ficketts had abandoned any claim to the forms, molds, and cruising design (also covered by the order of prejudgment replevin), and therefore Sag Harbour was entitled to retain possession of those items. The trial court, citing sections 78.20 and 78.21, Florida Statutes (1981), ordered Sag Harbour to pay attorney's fees and costs to the Ficketts as the prevailing party. The final judgment was modified to provide that the value of the Ficketts' interest in the boat was $8,500. The judgment also provided that, should Sag Harbour fail to return the *1253 boat or pay the attorney's fees and costs, the Ficketts would be entitled to judgment in that amount against the replevin bond posted by Sag Harbour.
We hold that the trial court erred in awarding attorney's fees to appellees. The court's opinion and judgment predicated the award upon a citation to sections 78.20 and 78.21, Florida Statutes (1981). Section 78.20 provides:
When property has been retained by, or redelivered to, defendant on his forthcoming bond or upon the dissolution of a prejudgment writ and defendant prevails, he shall have judgment against plaintiff for his damages for the taking, if any, of the property, attorney's fees and costs.
On the other hand, section 78.21 provides, in part:
When the property has not been retained by, or redelivered to, defendant and he prevails, judgment shall be entered against plaintiff for possession of the property and costs and against him for the value of the property and costs in the same manner as provided in section 78.19 for judgment in favor of plaintiff.
Section 78.19 contains no reference to attorney's fees. The only statutory authority for awarding attorney's fees is found in section 78.20, which applies when the defendant ultimately prevails and the goods have been retained by or redelivered to the defendant upon his posting of a forthcoming bond or upon the dissolution of a prejudgment writ of replevin.
Since the Ficketts did not post a forthcoming bond in this action, that provision of section 78.20 obviously has no application. The issuance of the prejudgment writ of replevin is governed by section 78.068, Florida Statutes (1981). Subparagraph 6 of that section provides that a defendant may obtain dissolution of a prejudgment writ by filing a contradictory motion with the court within ten days after service of the writ unless the petitioner proves the grounds upon which the writ was issued. No such contradictory motion was filed by appellees in this case, and the Ficketts did not answer until more than ten days after the writ was issued. Consequently, Sag Harbour legally retained possession of the Golden Topaz under the prejudgment writ through the trial of the case. The record does not reflect that the boat has ever been returned to the Ficketts.
Appellees contend that since the prejudgment writ was dissolved by the final judgment which ordered Sag Harbour to redeliver the boat to the Ficketts, the award of attorney's fees was entirely proper. We do not agree. It is undisputed that the property was neither retained by nor redelivered to appellees within the meaning of the provisions of section 78.20, and that an award of attorney's fees is authorized only by that section. Rather, the final judgment ordering Sag Harbour to redeliver the property to the Ficketts was entered pursuant to section 78.21, and that section contains no authority for awarding attorney's fees. Because the circuit court erred as a matter of law in relying on both section 78.20 and 78.21 as authority for awarding attorney's fees to appellees, that provision of the judgment is reversed.
We also hold that the circuit court erred in ruling that the Ficketts were entitled to possession of the Golden Topaz. The court's opinion and order relating to entry of final judgment recited as reasons for its ruling that the letter of September 18, embodying the agreement between Sag Harbour and Mirage, was ambiguous in that the parties themselves never had a "complete and mutual understanding of their agreement." The court further recited:
The Court finds that the plaintiff has failed in its burden to establish by a preponderance of all the evidence presented by plaintiff that it was and is entitled to possession of the disputed boat. The `writing' [letter of September 18, 1980] itself negates plaintiff's claim of entitlement to delivery to plaintiff at the Annapolis Boat Show. To construe the `writing' as plaintiff desires would be unconscionable, since if plaintiff was entitled to delivery and possession of the boat and allowed to keep it and never sell it, this would mean that defendants *1254 would forever lose the remainder of the agreed sales price of $8,500.00. The Court must construe their understanding as contemplating that defendants would retain the right to possession until the boat is sold by the broker, plaintiff, at which time defendants would be paid the balance of the agreed purchase price.
(emphasis added.) Based on this construction of the agreement, the court concluded that the Ficketts would be entitled to have possession of the boat and to retain possession until the "sale takes place and the $8,500.00 and freight is paid." The court recognized that Sag Harbour, after obtaining possession by replevin, had expended substantial funds to complete the boat and better its condition, but recited "that defendants are entitled to a return of the boat in the condition that it has been voluntarily placed by plaintiff, notwithstanding its claim of vast expense in completing the boat as desired, failing which the posted bond stands to indemnify defendants." The circuit court commented that this proceeding is strictly limited to the right of possession and that any contractual disputes between the parties must be resolved in another proceeding.
The predicate for the circuit court's decision to give appellees possession is its construction of the contract. We do not find that construction to comport with the contemplations of the parties and the applicable law. The "writing" clearly and unambiguously shows the parties contemplated that Sag Harbour would pay $7,500 to Mirage to cover the cost of building the boat, that the Golden Topaz would be delivered "complete as standard" to Sag Harbour at the Annapolis Boat Show for exhibit and sale, and that Sag Harbour would pay the cost of a slip, launching, and commissioning expenses. It seems clear to us from the terms of the agreement that the parties contemplated Mirage would deliver the completed boat with an MSO which would enable Sag Harbour to sell the boat to a prospective customer. Since Sag Harbour, not Mirage, was to sell the boat, it is only logical to construe the agreement as contemplating that Sag Harbour, upon its payment of $7,500 to Mirage and delivery of the boat to the Annapolis show, would take possession of the boat together with an MSO. The circuit court's conclusion that allowing plaintiffs to retain possession of the boat would permit them to defeat defendant's right to the balance of the agreed sales price by not selling the boat fails to take into consideration that Sag Harbour, under well-established principles of contract law, is under an implied  if not express  duty to exercise a good faith effort to accomplish a sale of the boat within a reasonable time and to pay the remaining amount due to Mirage. 11 Fla.Jur.2d, Contracts, § 134. We find no logic in removing possession of the boat from the party charged with the responsibility for selling it because to do so would substantially hinder that party's ability to perform its contractual obligation.
Moreover, it is apparent that Sag Harbour actually perfected its title and right to possession of the boat. It paid the $7,500 pursuant to the agreement and received an MSO which evidenced title under federal regulations. See 46 C.F.R. §§ 67.05-7 and 67.09-7 (1984). Appellees' belated preparation of a backdated MSO did not operate to divest Sag Harbour of its title and right to possession, nor did appellees' unauthorized removal of the boat from Maryland to Florida revive any right of possession in appellees. See Huckleberry v. Davis Double Seal Jalousies, Inc., 117 So.2d 519 (Fla. 3d DCA 1960).
As the court erred in awarding possession of the Golden Topaz to appellees, the judgment is reversed and the case remanded with directions to enter a judgment for appellant in accordance with this opinion. In view of this disposition, it is unnecessary to reach the other issues raised by appellant.
REVERSED and REMANDED.
ERVIN, J., concurs.
BOOTH, C.J., dissents.
*1255 BOOTH, Chief Judge, dissenting:
I respectfully dissent from the majority's reversal of the judgment below. The intent of the parties, as embodied in the letters of September 18 and September 22, and as indicated by the entire course of dealings between the parties both before and after that correspondence, is a question of fact for the finder of fact, in this case the trial court. There are facts, and implications from those facts, which support the trial court's determination that the Ficketts were entitled to the possession of the Golden Topaz. That other interpretations of the same facts can exist, illustrated by the opinion of the majority here, does not allow the reversal of the trial court's judgment.
The record shows that, in addition to the letter of September 18, and a responsive letter of September 22, there were subsequent conferences between the parties changing specifications of the Golden Topaz No. 2 and varying the contract between the parties. The trial court saw and heard these witnesses and evaluated their credibility. He was entitled to believe the testimony of Mr. Fickett[1] that the agreement and intent of the parties was: (1) that there was no guarantee the boat would be completed at the time of the boat show, but that the Ficketts would try their best to complete it by that time; (2) that the Ficketts required cash on delivery (COD), and extension of credit was not contemplated;[2] and (3) that a manufacturer statement of origin (MSO) was furnished by Fickett in order to allow the purchaser (appellant) to obtain financing to meet the COD requirement. The trial court was entitled to find that the Ficketts' delivery of the MSO to appellant was a matter for appellant's convenience and that the parties understood that the Ficketts would retain actual ownership and possession of the boat until it was completed and the balance of the purchase price paid.
As to the attorney fees award, appellees correctly point out that the appellant did not preserve any objection to the award of fees under the replevin statute.[3] But, even if the error is preserved for review, a remand, rather than reversal, is in order since a previous order of the trial court clearly stated the intent to award fees as sanctions for filing of sham pleadings and discovery violations by appellant.[4] Appellant *1256 conceded below that fees were awardable as sanctions, though it disputed the amount awarded.[5] Therefore, the greatest relief to which appellant is entitled is a remand to the trial court for determination of whether the same fees are awardable as sanctions as the court has attempted to award under the replevin statutes.
We should affirm the judgment below.

ON MOTION FOR REHEARING
ZEHMER, Judge.
Appellees have filed an extensive motion for rehearing and a motion for rehearing en banc. Both motions are denied.
In the motion for rehearing, present counsel for appellees, who was retained after our prior decision, set forth a lengthy statement of facts and argument (thirteen legal-size pages). The motion argues that the facts in our opinion are incorrect because the evidence is susceptible of contrary inferences which support the trial court's order. We note, however, that the statement of the case and facts in appellees' answer brief consisted of a total of three sentences. Appellees' motion for rehearing relies primarily on one argument as grounds for a rehearing; but, once more, we note that appellees, in their answer brief, graced us with only three sentences of argument on this point.
It has been repeatedly held that a party cannot present arguments in a motion for rehearing that have not been presented to the court in the appellate briefs or oral argument. Price Wise Buying Group v. Nuzum, 343 So.2d 115 (Fla. 1st DCA 1977); Sarmiento v. State, 371 So.2d 1047 (Fla. 3d DCA 1979). Because appellees did not present us with a meaningful statement of the facts and did not fully present in their answer brief the arguments now made, we decline to permit a total reargument of the case based on facts and law not originally argued in the briefs.
Appellees also contend that we have erred in considering the trial court's ruling on their entitlement to attorney's fees under section 78.20, Florida Statutes, because appellant failed to properly preserve such issue for appellate review. Our review of the record shows that appellees claimed attorney's fees in their counterclaim filed November 25, 1981, and that appellant denied this allegation in its answer filed June 9, 1982. Appellees had the affirmative burden of proving a contractual or statutory basis for attorney's fees in light of appellant's denial. Appellees relied upon a statutory basis for such fees since there was no contractual basis. After the court awarded fees to appellees in the final judgment filed June 3, 1983, appellant filed a timely motion for rehearing, arguing there was no statutory basis for the fees awarded. The motion for rehearing timely brought this matter to the attention of the trial court and properly preserved this issue for appellate review.[1]
Finally, we point out that appellees' motion for rehearing (and the dissenting opinion) rely upon a September 21, 1981, letter between the parties as evidence of the intent of the parties. This letter was never *1257 introduced into evidence and should not be considered proof of the intent of the parties.
ERVIN, J., concurs.
BOOTH, C.J., dissents with written opinion.
NOTES
[1] See, e.g., testimony of Mr. Fickett (Record, p. 511):

I work on  basically on a COD basis. I can't afford to have a bunch of people running around with my boats and not have their money and I had to have money for the boat COD and she explained to me that in order for her to secure a loan that she would need an MSO for financing. It's a very common thing.
[2] The letter of September 21, 1981, also supports this term of the agreement in expressly requiring a deposit of $3,000 "with the balance C.O.D."
[3] Claim for fees under the replevin statute was asserted throughout the proceedings and was granted by the court's order of May 6 (Record, p. 154). Evidence was introduced, without objection, as to the value of the services rendered by appellees' attorney. In subsequent memorandum of law, appellant did not challenge entitlement to fee under the statute but asserted that appellees had failed to present competent expert testimony supporting the fee award (Record, p. 167). Appellant's motion for rehearing, filed after the May 6 award of attorney fees, did not object to that award, although the motion challenged every other aspect of the court's May 6 order. The first time objection was made was in appellant's second motion for rehearing, filed June 14, after the amount of the fees was set at $10,000.
[4] By interlocutory order, the trial court ruled as follows (Record, pp. 57-58):

Defendant's Motion to Strike as Sham, Plaintiff's Motion to Discharge Plaintiff's Bond for Pre-Judgment Replevin, having been reviewed by the Court and considered along with the oral request for emergency hearing of counsel for the Plaintiff on December 18, 1981, and upon consideration of request by counsel for the Plaintiff to withdraw such Motion, the Motion is allowed to be withdrawn, however, the Court determines, declares and adjudges the Motion to be a Sham, and it is struck for all purposes.
Defendants' Motion to Compel on Notice to Produce is granted, and the Plaintiff shall respond in full to the Notice to Produce dated January 15, 1982, within 15 days from date.
... .
Defendant's Motion to Impose Sanctions is granted. This Court, based the Writ of Replevin upon the sworn affidavit of JULIENE BERK, accordingly it is further ORDERED AND ADJUDGED that the said JULIENE BERK and [sic] shall as a condition of maintaining the instant suit present herself within the jurisdiction of this Court for the purpose of having his or her deposition taken within 30 days of date.
This Court specifically retains jurisdiction to impose such sanctions as are necessary to carry out the effect and intent of this Order and to award attorney's fees and costs and take such further action as may be necessary and proper under the circumstances.
[5] Plaintiff's motion for rehearing (Record, pp. 194-95): "The only attorney fees to which Defendants are entitled are those imposable for sanctions under the May, 1982 ORDER in this cause." Plaintiff concludes by requesting, inter alia, a reduction in defendants' attorney fees.
[1] Appellees stress that this motion for rehearing was the second such motion filed by appellant. Similarly, the dissent points out in footnote 3 that the first motion for rehearing filed by appellant did not challenge appellees' entitlement to attorney's fees. In point of fact, the first motion for rehearing filed by appellant on May 16, 1983, was an improper pleading since it was addressed to an interlocutory order of the court not constituting a final judgment. See rule 1.530(b), Florida Rules of Civil Procedure.