376 So.2d 1168 (1979)
Albert Louis FRANCO and Oliver Eugene Coachman, Appellants,
v.
The STATE of Florida, Appellee.
Nos. 78-299, 78-300.
District Court of Appeal of Florida, Third District.
September 25, 1979.
*1169 Stephen J. Kogan, Miami and Corey E. Hoffman, South Miami, for appellants.
Jim Smith, Atty. Gen. and Steven R. Jacob, Asst. Atty., Gen., for appellee.
Before HAVERFIELD, C.J., and HUBBART and KEHOE, JJ.
HAVERFIELD, Chief Judge.
Police officers Oliver Coachman and Albert Franco appeal their convictions for perjury for falsely testifying before a grand jury that they did not give drugs to confidential informants in exchange for information.
They first contend that the trial court erred in admitting into evidence electronic recordings of their conversations which were obtained without an intercept warrant.
Deputy John Leskin was one of several Broward County police officers that had observed officers Coachman and Franco deliver narcotics to two confidential informants in May, 1976. In June, 1976 Leskin was called to the Dade County State Attorney's office which was investigating Franco and Coachman for alleged improprieties. On November 10, at the request of the investigator for the State's Attorney, Leskin held a telephone conversation with Franco with reference to Franco giving narcotics to confidential informants. This conversation was recorded with the consent of Deputy Leskin. On November 11 Leskin again called Franco and arranged for a personal meeting. Leskin, wired for sound, met later that same day with Franco and Coachman and the conversation at the meeting as well as the telephone conversation earlier that day were recorded. At trial Leskin testified that he consented to have his conversations with Franco and Coachman recorded and further testified as to the contents of these conversations. The tapes of the conversations were then introduced into evidence and played for the jury. In these recorded conversations Franco and Coachman stated that they did give narcotics to confidential informants in exchange for information. Franco and Coachman argue that the prosecution was required to obtain intercept warrants before the conversations could be recorded and, therefore, the tapes were not admissible. We do not agree.
The law is well established that the use of secret informers by the government is not per se unconstitutional and the Fourth Amendment does not protect a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it. Lewis v. United States, 385 U.S. 206, 87 S.Ct. 424, 17 *1170 L.Ed.2d 312 (1966); Hoffa v. United States, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 347 (1966); see also Walker v. State, 222 So.2d 760 (Fla. 3d DCA 1969) and cases cited therein. The above principle is applicable to Article I, Section 12 of the Florida Constitution (1968) and is codified in Section 934.03(2)(c), Florida Statute (1975):
"(c) It is lawful under this chapter for a law enforcement officer or a person acting under the direction of a law enforcement officer to intercept a wire or oral communication when such person is a party to the communication or one of the parties to the communication has given prior consent to such interception and the purpose of such interception is to obtain evidence of a criminal act."
However, Tollett v. State, 272 So.2d 490 (Fla. 1973), the lead case with respect to the right of privacy protected by Article I, Section 12, requires that in keeping with the intent thereof the participant in a communication must himself take the witness stand and testify that he gave his consent to the interception as a predicate to the introduction of the electronic reproduction of the communication. As the court explained:
"This is so because it is an elementary rule of evidence that a party to a discussion or communication with a defendant may take the witness stand and testify, subject to cross-examination, as to the contents of his communication or discussion with a defendant and this can include as a logical concomitant to his testimony any tape or electronic recordings of such communications or discussions which he himself made or which he authorized (consented for) police officers to make. Such direct testimony easily falls in the class of those exceptions where establishment of probable cause and securance of a warrant or order are not required." 272 So.2d 494.
It is clear that if there is compliance with Section 934.03(2)(c) and Tollett, supra, electronic reproductions of communications between an informer and the accused may be introduced into evidence and the securance of an intercept warrant or order are not necessary regardless of whether there was sufficient time to obtain one. A wrongdoer who voluntarily speaks to another of his wrongdoings, only has the hope or expectation, not a constitutionally protected right, that the other person will not breach his confidence and testify as to the contents of their conversations. It logically follows then that recordings of such communications should be and are admissible after the individual in whom the accused has confided has testified (both as to his consent and the contents of his discussion) in that in the search for the truth it is by far the most reliable evidence possible. See Walker v. State, 222 So.2d 760, 762 (Fla. 3d DCA (1969), supra. Conceivably these recordings may ultimately be favorable to the accused as the informer's testimony may not accurately reflect the conversations or quote statements out of context.
Finally to the extent that our holding herein may conflict with State v. Muscara, 334 So.2d 167 (Fla. 3d DCA 1976), we hereby recede from Muscara.
Turning to the instant case, the record reflects that Deputy Leskin took the witness stand and testified as to his consent to taping the conversations and then the contents thereof prior to the actual introduction of the tapes. For the reasons set out above we conclude the tapes were admissible. See Crespo v. State, 350 So.2d 507, 509 (Fla. 3d DCA 1977).
We also considered the second point on appeal and find no merit therein. See U.S. v. Gregono, 497 F.2d 1253 (4th Cir.1974).
Affirmed.
HUBBART, Judge (dissenting).
I must respectfully dissent. I would reverse the convictions appealed from and remand the cause to the trial court with directions to order a new trial and to grant the defendants' motion to suppress the tape recordings herein for failure of the police to obtain a valid intercept warrant based on the authority of State v. Muscara, 334 So.2d 167 (Fla. 3d DCA 1976).
*1171 It seems clear from this record, and the court herein does not reach a contrary result, that the police had ample time to secure an intercept warrant prior to conducting the electronic surveillance in this case. All the taped conversations with the defendants herein were initiated by the police after a lengthy police investigation during which time there was more than a sufficient opportunity to have secured an intercept warrant.
In State v. Muscara, supra, this court held that the failure to secure an intercept warrant to electronically record, as here, a conversation between the defendant and a consenting police informer, under circumstances where it was practicable for the police to have secured such a warrant, rendered the electronic interception of such conversations "unreasonable" and the tape recordings thereof inadmissible in evidence within the meaning of Article I, Section 12, of the Florida Constitution. The result reached in Muscara was in no way changed by the fact that the police informer who participated in the conversation consented, as here, to the electronic surveillance of such conversation. The fact remains that the defendant did not consent to such interception and the police informer can in no sense be held to be the defendant's agent for the purpose of waiving his right to be free from unreasonable interceptions of private communications under Article I, Section 12 of the Florida Constitution. See Silva v. State, 344 So.2d 559 (Fla. 1977). To the extent that Crespo v. State, 350 So.2d 507 (Fla. 3d DCA 1977), conflicts with Muscara, I would recede from Crespo.
Mr. Justice Brennan in his dissenting opinion in Lopez v. United States, 373 U.S. 427, 475-490, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963), which was adopted in part in Osborn v. United States, 385 U.S. 323, 87 S.Ct. 429, 17 L.Ed.2d 394 (1966), states the classic position as to why electronic eavesdropping of the kind conducted in this case should receive Fourth Amendment protection. This position was further amplified by Mr. Justice Harlan in his dissenting opinion in United States v. White, 401 U.S. 745, 768-795, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971). Although these views have not entirely prevailed insofar as an interpretation of the Fourth Amendment, the position taken therein has prevailed in this state in the Muscara decision as an interpretation of Article I, Section 12 of the Florida Constitution. It is settled federal constitutional law that a state may give its citizens greater protection under its state constitutional provision on unreasonable searches and seizures than that afforded by the Fourth Amendment. Cooper v. California, 386 U.S. 58, 62, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967).
I would afford our citizens greater rights under Article I, Section 12 of the Florida Constitution than that afforded by the Fourth Amendment based on the above authorities. In my view, a person should have a reasonable expectation of privacy whenever he talks to another person that a verbatim tape recording is not being made of the conversation. I think it is too great a burden to place on our citizens the risk of assuming that whoever they talk to is tape recording verbatim everything that is being said. Certainly a person takes a risk that whoever he talks to will breach a confidence and repeat it to the outside world. That is a far cry, however, from tape recording the entire conversation and playing it for the outside world. To sanction such electronic surveillance as lying entirely beyond any constitutional protection is, in my view, to impose a chilling effect on the right of free speech. Our private conversations with others are at times punctuated with serious, quiet, intimate, freewheeling, defiant, frivolous, and even profane discourse. It liberates our daily lives, but few, if any, would want such conversations spread on the public record. To sanction the electronic eavesdropping approved in this case is to place such conversations on the public record uncontrolled by any constitutional limitation. I think there is a fundamental qualitative difference between a police informer orally repeating a conversation with another person, and a police informer playing a tape recording which he has clandestinely made of the same conversation. The former is a breach of confidence *1172 which I think our citizens can live with; the latter is, in my view, a serious invasion of one's reasonable expectation of privacy which is the core value that Article I, Section 12 of the Florida Constitution was designed to protect. Sarmiento v. State, 371 So.2d 1047 (Fla. 3d DCA 1979); Huffer v. State, 344 So.2d 1332 (Fla. 2d DCA 1977).
This is not to say that the police may not electronically monitor conversations between a police informer and a criminal suspect consistent with our constitution where there is good reason to believe that the suspect in question is violating the law. If that showing is made to a magistrate and a valid intercept warrant is issued, I find no objection whatever to the electronic interception which was accomplished in this case as this would be a reasonable interception. Article I, Section 12 of the Florida Constitution does not prohibit all interceptions of private communications, but only "unreasonable" interceptions. My objection, consistent with the Muscara decision, is that the interception in this case was accomplished without benefit of a valid intercept warrant, under circumstances where it was practicable to have obtained one, and was thus an "unreasonable" interception within the meaning of Article I, Section 12 of the Florida Constitution.
I see nothing in Tollett v. State, 272 So.2d 490 (Fla. 1973), which states a contrary rule. In that case, the court did not hold that electronic surveillance of a private conversation with a consenting police informer is constitutional even though it would have been practicable under the circumstances for the police to have obtained a prior intercept warrant for such surveillance. The court was not presented with that issue and, accordingly, did not pass on it. If anything, the language of the opinion appears to announce a decided preference for intercept warrants as the normal method by which governmental electronic surveillance should be conducted.
I recognize that Section 934.03(2)(c), Florida Statutes (1975), tracks prior electronic eavesdropping law before 1968 and, as interpreted, places beyond the scope of the electronic eavesdropping statute any electronic interceptions of a conversation outside the home between two or more people where one of the parties consents to the conversation. Sarmiento v. State, 371 So.2d 1047 (Fla. 3d DCA 1979). That statute, however, does not and cannot constitute an authoritative interpretation of Article I, Section 12 of the Florida Constitution which went into effect in 1968, and, to the extent that the statute conflicts with the constitution, the statute is inoperative. Brown v. City of Lakeland, 61 Fla. 508, 54 So. 716 (1911).
I would reverse and remand as indicated above.