400 So.2d 758 (1981)
Louis HOBERMAN, Appellant,
v.
STATE of Florida, Appellee.
No. 57887.
Supreme Court of Florida.
April 30, 1981.
As Corrected On Denial of Rehearing July 31, 1981.
Raymond J. Takiff of the Law Offices of Raymond J. Takiff, Coconut Grove, for appellant.
Jim Smith, Atty. Gen., and Paul Mendelson, Asst. Atty. Gen., Miami, for appellee.
PER CURIAM.
On March 7, 1979, appellant was convicted of bribery and unlawful compensation for official behavior pursuant to sections 838.015(1) and 838.016(1), Florida Statutes (1977). The convictions were grounded in part upon tape recordings of private incriminating conversations between appellant and a Dr. Airan in appellant's home. The conversations were transmitted by a "body bug" planted on Dr. Airan to a police vehicle some four blocks away. In light of our recent decision in State v. Sarmiento, 397 So.2d 643 (Fla. 1981), the tape recordings of conversations held in the home should have been suppressed, and we therefore reverse.
For guidance in the event of a re-trial, we note that appellant's challenge to the composition of the grand jury was laid to rest in Reed v. State, 267 So.2d 70 (Fla. 1972), and Portee v. State, 253 So.2d 866 (Fla. 1971). Appellant's vagueness challenge fails because sections 838.015(1) and 838.016(1) convey a sufficiently definite warning as to the proscribed conduct, see Faust v. State, 354 So.2d 866 (Fla. 1978); Zachary v. State, 269 So.2d 669 (Fla. 1972), and his assertion of overbreadth is unavailing because he has failed to show that the statutes could be applied to constitutionally protected conduct, see Sandstrom v. Leader, 370 So.2d 3 (Fla. 1979).
Accordingly, the judgment of the trial court is reversed, and this cause is remanded for proceedings not inconsistent with this opinion.
*759 SUNDBERG, C.J., and ADKINS, OVERTON, ENGLAND and McDONALD, JJ., concur.
ALDERMAN, J., concurs in part and dissents in part with an opinion, with which BOYD, J., concurs.
ALDERMAN, Justice, concurring in part, dissenting in part.
I agree that sections 838.015(1) and 838.016(1) are not unconstitutionally vague or overbroad and that Hoberman's challenge to the grand jury composition is without merit. I do not agree, however, that the trial court erred in overruling Hoberman's objections to the introduction of tape recordings of conversations which Hoberman had with Dr. Airan, an undercover state agent, and the transcripts of these recordings. This case is not controlled by our recent decision in State v. Sarmiento, 397 So.2d 643 (Fla. 1981), because Sarmiento involved a motion to suppress the testimony of police officers as to what they had heard on an electronic monitor and did not involve tape recordings. As I pointed out in my dissent in Sarmiento, the defendant in that case expressly conceded that he had no reasonable expectation of privacy concerning the possibility that the undercover detective in his home would record the conversation by means of a recorder on his person or a recorder outside the premises.
In Sarmiento, this Court held only that the police officers could not testify as to the contents of conversations they overheard by monitoring the conversations which took place in defendant's home, and we approved the decision of the Third District. The Third District, in Sarmiento v. State, 371 So.2d 1047 (Fla. 3d DCA 1979), reaffirmed its earlier decision of Hajdu v. State, 189 So.2d 230 (Fla. 3d DCA 1966), cert. denied, 196 So.2d 923 (Fla. 1967). In Hajdu, the Third District held that the person outside the defendant's home who monitored a conversation which took place inside the home could not testify as to the contents of the conversation. However, it distinguished the case before it where the testimony of the third person who monitored the conversation outside the home was inadmissible from a situation where a properly authenticated tape recording of a conversation and the transcription thereof has been made. It stated that had the conversation been recorded by the third person, the tape recording would have been admissible.
In Franco v. State, 376 So.2d 1168 (Fla. 3d DCA 1979), cert. denied, 386 So.2d 636 (Fla. 1980), the Third District addressed the issue of the admissibility of recordings of the communications where there has been compliance with section 934.03(2)(c) and held:
A wrongdoer who voluntarily speaks to another of his wrongdoings, only has the hope or expectation, not a constitutionally protected right, that the other person will not breach his confidence and testify as to the contents of their conversations. It logically follows then that recordings of such communications should be and are admissible after the individual in whom the accused has confided has testified (both as to his consent and the contents of his discussion) in that in the search for the truth it is by far the most reliable evidence possible.
376 So.2d at 1170. See also Crespo v. State, 350 So.2d 507 (Fla. 3d DCA 1977), cert. denied, 358 So.2d 129 (Fla. 1978).
The District Court of Appeal, First District, in State v. Scott, 385 So.2d 1044 (Fla. 1st DCA 1980), accurately distinguished the facts of Sarmiento from the case before it where an undercover agent consented to wear a concealed microphone and transmitter, by means of which each of the drug transactions in defendant's home was tape recorded by officers outside the home. The First District said:

Sarmiento involved the admissibility of testimony of officers who engaged in "warrantless electronic eavesdropping" (id. at 1049), accomplished by means of a hidden electronic "body bug" worn by an undercover officer which transmitted his conversations with the defendant, inside *760 defendant's house trailer, to where they were electronically monitored by other officers stationed nearby outside the house trailer. In contrast, this case involves admissibility of tape recordings of the conversation conducted inside appellee's home, rather than admissibility of testimony of officers concerning unrecorded conversations overheard by means of electronic eavesdropping. (Footnote omitted.)
385 So.2d at 1047. Finding it unnecessary to pass upon the question in Sarmiento as to whether the testimony of the recording officers standing alone, as opposed to the tape recording itself, would be admissible, the First District Court held that the protection of the constitution against unreasonable interception of private communications should not be extended to communications evidencing criminal transactions, disclosed and recorded by prior consent of one of the participating communicants. To support its holding, the district court quoted at length from United States v. White, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971).
In White, the Supreme Court of the United States said:
In these circumstances, "no interest legitimately protected by the Fourth Amendment is involved," for that amendment affords no protection to "a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it." Hoffa v. United States, [385 U.S. 293] at 302 [, 87 S.Ct. 408 at 413, 17 L.Ed.2d 374.] No warrant to "search and seize" is required in such circumstances, nor is it when the Government sends to defendant's home a secret agent who conceals his identity and makes a purchase of narcotics from the accused, Lewis v. United States, 385 U.S. 206 [, 87 S.Ct. 424, 17 L.Ed.2d 312] (1966), or when the same agent, unbeknown to the defendant, carries electronic equipment to record the defendant's words and the evidence so gathered is later offered in evidence. Lopez v. United States, 373 U.S. 427 [, 83 S.Ct. 1381, 10 L.Ed.2d 462] (1963).
... .
Concededly a police agent who conceals his police connections may write down for official use his conversations with a defendant and testify concerning them, without a warrant authorizing his encounters with the defendant and without otherwise violating the latter's Fourth Amendment rights. Hoffa v. United States, 385 U.S., at 300-303 [87 S.Ct. at 412-414.] For constitutional purposes, no different result is required if the agent instead of immediately reporting and transcribing his conversations with defendant, either (1) simultaneously records them with electronic equipment which he is carrying on his person, Lopez v. United States, supra; (2) or carries radio equipment which simultaneously transmits the conversations either to recording equipment located elsewhere or to other agents monitoring the transmitting frequency. On Lee v. United States, [343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270] supra. If the conduct and revelations of an agent operating without electronic equipment do not invade the defendant's constitutionally justifiable expectations of privacy, neither does a simultaneous recording of the same conversations made by the agent or by others from transmissions received from the agent to whom the defendant is talking and whose trustworthiness the defendant necessarily risks.
Our problem is not what the privacy expectations of particular defendants in particular situations may be or the extent to which they may in fact have relied on the discretion of their companions. Very probably, individual defendants neither know nor suspect that their colleagues have gone or will go to the police or are carrying recorders or transmitters. Otherwise, conversation would cease and our problem with these encounters would be nonexistent or far different from those now before us. Our problem, in terms of *761 the principles announced in Katz [v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576], is what expectations of privacy are constitutionally "justifiable"  what expectations the Fourth Amendment will protect in the absence of a warrant. So far, the law permits the frustration of actual expectations of privacy by permitting authorities to use the testimony of those associates who for one reason or another have determined to turn to the police, as well as by authorizing the use of informants in the manner exemplified by Hoffa and Lewis. If the law gives no protection to the wrongdoer whose trusted accomplice is or becomes a police agent, neither should it protect him when that same agent has recorded or transmitted the conversations which are later offered in evidence to prove the State's case. See Lopez v. United States, 373 U.S. 427 [, 83 S.Ct. 1381, 10 L.Ed.2d 462] (1963).
... .
Nor should we be too ready to erect constitutional barriers to relevant and probative evidence which is also accurate and reliable. An electronic recording will many times produce a more reliable rendition of what a defendant has said than will the unaided memory of a police agent. It may also be that with the recording in existence it is less likely that the informant will change his mind, less chance that threat or injury will suppress unfavorable evidence and less chance that cross-examination will confound the testimony. Considerations like these obviously do not favor the defendant, but we are not prepared to hold that a defendant who has no constitutional right to exclude the informer's unaided testimony nevertheless has a Fourth Amendment privilege against a more accurate version of the events in question.
It is thus untenable to consider the activities and reports of the police agent himself, though acting without a warrant, to be a "reasonable" investigative effort and lawful under the Fourth Amendment but to view the same agent with a recorder or transmitter as conducting an "unreasonable" and unconstitutional search and seizure.
401 U.S. at 749-753, 91 S.Ct. at 1124-1126. See also United States v. Caceres, 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979).
In the present case, Hoberman, who had no reasonable expectation that Dr. Airan would not go to the authorities and report what had transpired in their conversations, likewise had no reasonable expectation that Dr. Airan would not record this conversation. The recording was lawful under section 934.03(2)(c), Florida Statutes (1977), which provides:
It is lawful under this chapter for a law enforcement officer or a person acting under the direction of a law enforcement officer to intercept a wire or oral communication when such person is a party to the communication or one of the parties to the communication has given prior consent to such interception and the purpose of such interception is to obtain evidence of a criminal act.
Dr. Airan, a civil engineer, was under contract with the City of Sunrise on several projects. Hoberman, on several occasions, had approached Dr. Airan on the subject of a payoff to Hoberman to insure the continuation of Dr. Airan's contract with the city. Dr. Airan went to the state attorney to advise him of Hoberman's overtures for money. The state attorney requested that Dr. Airan act as an undercover agent and that he go through with the transfer of money. He was asked to wear an electronic device and to go to Hoberman's home to set up the exchange of money, which he did. His conversation with Hoberman was tape recorded by the police and transcribed. A later telephone conversation was also recorded with Dr. Airan's consent as was the subsequent meeting at Hoberman's home where the exchange of money took place.
Dr. Airan testified as to his consent to the recordings and as to the authenticity of *762 the tape recordings and the transcripts. The recordings and transcripts were offered into evidence by the State to corroborate Dr. Airan's testimony as to the criminal conduct on Hoberman's part which had transpired in Hoberman's home. Hoberman objected at trial to the introduction of the tape recordings and transcripts on the basis that they were improper evidence since they were merely corroborative of uncontradicted consistent statements. The court overruled this objection. Hoberman later objected to the introduction of the recordings on the basis that a search warrant should have been obtained because there was reasonable time to have obtained one. This objection was also denied, and the recordings and the transcripts were properly admitted into evidence. Hoberman's rights under article I, section 12, Florida Constitution, and the fourth amendment to the United States Constitution were not violated because he had no reasonable expectation of privacy that his conversations with Dr. Airan were not being recorded. Furthermore, the recordings were lawful in accordance with section 934.03(2)(c).
I believe the majority, in this case, has gone beyond the letter of the Florida and the federal constitutions and has judicially created an unreasonable barrier to relevant, probative, accurate, and reliable evidence. United States v. White. Accordingly, I would affirm the trial court's judgment.
BOYD, J., concurs.