405 So.2d 778 (1981)
Alex MORNINGSTAR, Appellant,
v.
STATE of Florida, Appellee.
No. 79-2360.
District Court of Appeal of Florida, Fourth District.
November 12, 1981.
Rehearing Denied December 2, 1981.
Harry Gulkin and Joseph A. Varon of Varon & Stahl, P.A., Hollywood, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Paul H. Zacks and Max Rudmann, Asst. Attys. Gen., West Palm Beach, for appellee.
HERSEY, Judge.
This is an appeal from a judgment and sentence following appellant's conviction by a jury of attempted trafficking in stolen property, as prohibited by Section 810.019, Florida Statutes (1977). Appellant challenges the correctness of the trial court's denial of a motion to suppress evidence resulting from electronic interceptions of his conversations with two police informants.
The appellant operates a pawn shop. The police secured the agreement of two confessed thieves, who had allegedly furnished the appellant with stolen jewelry for resale, to conduct personal and telephone conversations with the appellant about this criminal conduct, and to allow such conversations to be monitored and recorded. At trial, the officers who monitored and recorded the conversations (which took place at appellant's place of business) identified the tape recordings. The informants also testified and identified the recordings which were offered into evidence over appellant's objection.
In a recent decision, the Florida Supreme Court held that it was unlawful for police to monitor and record, without a warrant, conversations conducted in a defendant's *779 home between himself and an undercover police officer. State v. Sarmiento, 397 So.2d 643 (Fla. 1981). The Court held that such conduct violated the provisions of Article I, Section 12 of the Florida Constitution, which prohibits the unreasonable interception of private communications, notwithstanding the provisions of Section 934.03(2)(c), Florida Statutes (1977), which authorizes the interception of a communication when a law enforcement officer or one under his direction is a party to it or where one of the parties to such communication has given prior consent to the interception. On the other hand the Supreme Court held that the police informant who participated in the conversation was free to testify about the contents of the conversation, because the defendant was deemed to have assumed the risk that his partner in conversation might disclose the contents of the conversation to others. That situation was distinguished from those where third parties are monitoring or recording the conversations:
But what makes the issue before us different from the situation above is that Sarmiento did enjoy a reasonable expectation of privacy that no one else was listening to the conversation in the home besides the undercover police officer and others present therein. To assume the risk that one who participates in a conversation held in the home might later reveal the contents of that conversation is one thing, but to assume the risk that uninvited and unknown eavesdroppers might clandestinely participate in that conversation and later reveal its contents is another, and indeed proves too much.
Sarmiento, supra, at page 645.
The majority then concluded that testimony of police officers "as to what they heard on the electronic monitor" emanating from a body bug concealed on the person of an undercover police officer transacting a drug buy in the home of the defendant was inadmissible.
The holding is said to be based upon the fact that Article I, Section 12 of the Florida Constitution affords more stringent protection of the right of privacy than that afforded by the Federal Constitution. To reach this result the court initially distinguished between the risk assumed by an individual that another participant in a conversation might reveal the contents of that conversation to others (to which the court attaches no constitutional impediments because of the element of consent) and the risk that a private conversation will be transmitted, with the consent of one party, by electronic device to others who may listen and later reveal its contents (which the court finds constitutionally infirm).
Justice Alderman's dissent, concurred in by Justice Boyd, relying on United States v. White, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1970) and Hoffa v. United States, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966), postulates that this is a distinction without a difference.
The Sarmiento court then made a second important distinction. The majority emphasized that the troublesome transmission emanated from the defendant's home, the "one place to which we can retreat, relax, and express ourselves as human beings without fear that an official record is being made of what we say by unknown government agents at their unfettered discretion," quoting from Sarmiento v. State, 371 So.2d 1047, 1051 (Fla.3d DCA 1979).
In Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) the Supreme Court of the United States, in discussing such a distinction, stated:
The Government stresses the fact that the telephone booth from which the petitioner made his calls was constructed partly of glass, so that he was as visible after he entered as he would have been if he had remained outside. But what he sought to exclude when he entered the booth was not the intruding eye  it was the uninvited ear. He did not shed his right to do so simply because he made his calls from a place where he might be seen. No less than an individual in a business office, in a friend's apartment, or in a taxicab, a person in a telephone booth may rely upon the protection of the *780 Fourth Amendment. One who occupies it, shuts the door behind him, and pays the toll that permits him to place a call is surely entitled to assume that the words he utters into the mouthpiece will not be broadcast to the world. To read the Constitution more narrowly is to ignore the vital role that the public telephone has come to play in private communication.
At 352, 88 S.Ct. at 511-12.
Also see Mancusi v. DeForte, 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed. 1154 (1968).
The Sarmiento opinion expressly relied on the Katz analysis of a "reasonable expectation of privacy." If we apply the Katz analysis here, and add the element of the greater protection afforded by Florida's constitution, we might well be forced to the conclusion that an individual also has a reasonable expectation of privacy that his personal conversations conducted at his place of business are not being monitored by government officials.
On the other hand, there is precedent for admissibility. In the earlier case of Tollett v. State, 272 So.2d 490 (Fla. 1973) the Florida Supreme Court indicated that under Article I, Section 12 of the Florida Constitution, the interception of a private communication is unreasonable unless a warrant is first obtained or consent from one of the parties to the communication is secured and established. The court in that case stated:
We take note of Chapter 934, F.S., enacted as Chapter 69-17 at the 1969 legislative session and particularly Section 934.01(4) thereof, which reads in part:
"(4) To safeguard the privacy of innocent persons, the interception of wire or oral communications when none of the parties to the communication has consented to the interception should be allowed only when authorized by a court of competent jurisdiction ..." (Emphasis added.)
It is our view that this language should not be interpreted to obviate the necessity of a police officer securing a warrant unless one of the parties has given consent which must be shown through proper testimony  not hearsay. "Consents" from police informers with no substantial or requisite interest in the residence or papers or personal effects of a suspect are not legally sufficient to relieve police officers of the necessity of securing search warrants to search the dwelling, person or papers and effects of the suspect; neither should their "consents" except under the safeguards of authentication as hereinafter noted be sufficient to obviate the necessity of securing a warrant for intercepting wire or oral communication.
The quoted language in Section 934.01(4) does not abrogate the rule expressed in Walker v. State, supra, that a participant in a communication must himself take the witness stand and testify that he gave his consent to the interception as a predicate to the introduction of the electronic reproduction of the communication. Its introduction under those circumstances is not violative of the new language in Section 12, Article I; rather, it is in keeping with the intent of the new verbiage. This is so because it is an elementary rule of evidence that a party to a discussion or communication with a defendant may take the witness stand and testify, subject to cross-examination, as to the contents of his communication or discussion with a defendant and this can include as a logical concomitant to his testimony any tape or electronic recordings of such communications or discussions which he himself made or which he authorized (consented for) police officers to make. Such direct testimony easily falls in the class of those exceptions where establishment of probable cause and securance of a warrant or order are not required.
Id. at 494 (Emphasis added).
While the statutory exception treated in Tollett has subsequently been modified the constitutional provision interpreted by that court was the same as that applied in Sarmiento, yet the Tollett case was not mentioned in the Sarmiento opinion.
To conclude, then, the Sarmiento court overcame three obstacles in reaching the *781 result that the evidence was inadmissible. First, the testimony would not have been excluded by federal constitutional considerations. The supreme court found that the Florida Constitution imposes a stricter standard. Second, the behavior which resulted in acquiring the evidence was sanctioned by Section 934.03(2)(c), Florida Statutes (1977). To that extent, held the supreme court, the statute is "unconstitutional and unenforceable." Third, there is precedent for admissibility. Since neither the majority opinion nor the dissent specifically address the Tollett case, although it is indirectly cited in the dissent, we are left to speculate whether the court felt that it was clearly distinguishable or, on the other hand, that it was by necessary implication, overruled.
In addition to the foregoing it is necessary to reemphasize the final and important distinction apparently created by Sarmiento. The court in that case suggests that it is appropriate to apply one rule to interception of transmissions from the defendant's home, a rule of exclusion, and a different rule to transmissions from other locations. While, analytically, we have initial difficulty with this aspect of that case (particularly in view of Katz, supra) its application would seem to control disposition of the present case.
In is tempting to generalize that the Fourth Amendment and its Florida counterpart protect people rather than places. Like all oversimplifications, however, such an observation has a tendency to obscure the detail necessary for prospective application of the principle involved. It seems appropriate to conclude that the quantum of reasonableness that society will ascribe to an expectation of privacy has a direct albeit undefined relationship to the geographical location of the individual at the time of the alleged violation of his constitutional rights. Such an analysis seems implicit in Katz, supra, and, indeed, is explicit in Justice Harlan's concurring opinion in that case.
That an individual's home affords his expectation of privacy the highest degree of credibility can no longer be doubted after Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). In that case Justice Stevens, for the majority, laid to rest any lingering suspicion that the home might not be deserving of special treatment in Fourth Amendment cases:
The Fourth Amendment protects the individual's privacy in a variety of settings. In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home  a zone that finds its roots in clear and specific constitutional terms: "The right of the people to be secure in their ... houses . .. shall not be violated." That language unequivocally establishes the proposition that "[a]t the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable government intrusion." Silverman v. United States, 365 U.S. 505, 511, 81 S.Ct. 679, 683, 5 L.Ed.2d 734. In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.
100 S.Ct. 1371, 1381, 1382.
We conclude that the Florida Supreme Court is equally impressed with the necessity for singling out a man's home for such special treatment and that the court's concern found expression in Sarmiento.
We therefore interpret Sarmiento as rendering inadmissible a communication obtained in a manner otherwise permissible under Section 934.03(2)(c), Florida Statutes (1979) only where that communication emanates from the defendant's home. Our sister court, the First District Court of Appeal, reached a similar conclusion in Padgett v. State, 404 So.2d 151 (Fla. 1st DCA 1981). That proposition disposes of the principal question posed by appellant Morningstar.
We find no merit in the other issues raised by appellant and for the foregoing reasons we affirm the judgment and conviction appealed from here.
*782 Because the subject is one we believe to be of great public interest we certify to the Supreme Court of Florida the following question:
Does Article I, Section 12 of the Florida Constitution prohibit reliance upon Section 934.03(2)(c), Florida Statutes (1979) as to the interception of a private communication emanating from a location other than the defendant's "home"?
AFFIRMED AND QUESTION CERTIFIED.
LETTS, C.J., concurs.
ANSTEAD, J., specially concurs with opinion.
ANSTEAD, Judge, specially concurring:
I concur in the majority's certification of the question as one of great public importance. I also concur in the majority's resolution of those issues presented in this appeal which do not involve the propriety of electronic eavesdropping. However, while I concur in the majority's disposition of the Sarmiento issue, I find it difficult to discern a viable rationale that would limit the application of the Sarmiento holding to the home.
At first blush the majority's interpretation of Sarmiento appears eminently reasonable. In Sarmiento, our Supreme Court held Florida Statute 934.03(2)(c) unconstitutional under Article I, Section 12 of the Florida Constitution "insofar as that statute authorizes the warrantless interception of a private conversation conducted in the home" (emphasis in original).[1] Subsequently, in Hoberman v. State, 400 So.2d 758 (Fla. 1981), the court reversed "convictions ... grounded in part upon tape recordings of private incriminating conversations between appellant and a Dr. Airan in appellant's home" (emphasis supplied). Thus, it initially appears that the court is attempting to limit the impact of Article I, Section 12 protections against the unreasonable interception of private communications to those non-exigent situations in which law enforcement officers intercept, with the consent of one party but without a warrant, an incriminating conversation originating in the non-consenting party's home. This conclusion is seemingly buttressed by the court's denial of certiorari in Franco v. State, 376 So.2d 1168 (Fla.3d DCA 1979), cert. den. 386 So.2d 636 (Fla. 1980), in which the admission at trial of recordings of telephone conversations between the defendants and an investigator, obtained outside their homes and without a warrant, was upheld. In addition, the First District Court of Appeal has recently affirmed a conviction obtained under similar circumstances, Pittman v. State, 397 So.2d 1205 (Fla. 1st DCA 1981), and in so doing has noted the Supreme Court's denial of certiorari in three other cases in which the Third District's opinion in Sarmiento was interpreted quite narrowly. The First District has also refused to apply Sarmiento to a situation involving a defendant's motel room. See Padgett v. State, 404 So.2d 151 (Fla. 1st DCA 1981).
However, a closer scrutiny of Sarmiento indicates that perhaps the Supreme Court has not limited the impact of its decision to conversations occurring in the defendant's home. The Supreme Court secured review of the Third District Court of Appeal's decision in Sarmiento v. State, 371 So.2d 1047 (Fla.3d DCA 1979) on the basis that such decision conflicted with Franco v. State. Art. V, Section 3(b)(3), Florida Constitution (1972). In Franco the Third District upheld the admission at trial of recordings of telephone conversations between the defendants and an investigator, obtained outside their homes and without a warrant. Franco and Sarmiento may be distinguishable on the basis that one involved the home and the other did not, however, the granting certiorari in Sarmiento the Supreme Court *783 found that the two cases were in conflict. Obviously, two cases cannot be in conflict if they can be validly distinguished; hence, any attempt to define Sarmiento as limiting the impact of Article I, Section 12 protections against electronic eavesdropping to conversations occurring in the defendant's home is belied by the jurisdictional basis upon which the Supreme Court accepted review in the case. It also follows that if the Supreme Court undertook to review Sarmiento on the basis that Sarmiento conflicted with Franco, and approved Sarmiento, that Franco was implicitly disapproved, although the Sarmiento decision is silent on this point.[2]
In addition, any scheme explicitly limiting constitutional protections against electronic eavesdropping to conversations occurring in a defendant's home cuts against the grain of current federal and state search and seizure law. As noted in Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), "the Fourth Amendment protects people, not places." 389 U.S. 351, 88 S.Ct. 511, 19 L.Ed.2d 582. The issue is thus not so much the place where the conversation occurs but whether the person has a reasonable expectation of privacy. The Sarmiento decision expressly relied on the Katz analysis of privacy interests. In Katz, the defendant was found to have a reasonable expectation of privacy regarding a telephone conversation he initiated from a public phone booth. The court stated:
The Government stresses the fact that the telephone booth from which the petitioner made his calls was constructed partly of glass, so that he was as visible after he entered as he would have been if he had remained outside. But what he sought to exclude when he entered the booth was not the intruding eye  it was the uninvited ear. He did not shed his right to do so simply because he made his calls from a place where he might be seen. No less than an individual in a business office, in a friend's apartment, or in a taxicab, a person in a telephone booth may rely upon the protection of the Fourth Amendment. One who occupies it, shuts the door behind him, and pays the toll that permits him to place a call is surely entitled to assume that the words he utters into the mouthpiece will not be broadcast to the world. To read the Constitution more narrowly is to ignore the vital role that the public telephone has come to play in private communication.
389 U.S. 352, 88 S.Ct. 511, 512, 19 L.Ed.2d 582. See also Mancusi v. DeForte, 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed. 1154 (1968).
In sum, any scheme which purports to limit constitutional protections against electronic eavesdropping to conversations occurring in a defendant's home is contrary to the "reasonable expectation of privacy" framework of analysis developed in Katz and adopted by Sarmiento. To say that a person may never have a reasonable expectation that his private communications are not being intercepted except within the confines of his home is illogical. A reasonable expectation of privacy may exist regarding a conversation occurring in a variety of locations. Katz v. United States. On the other hand, such expectation of privacy may not always exist in a defendant's home. For instance, it could hardly be argued that a kidnapper known to be holding a hostage in his home would have a reasonable expectation of privacy regarding his outgoing telephone calls. What constitutes a "reasonable expectation of privacy" in a given situation is a function of many factors, of which the location of the conversation is only one. Katz v. United States. Applying the Katz analysis here I think it is reasonable to conclude that a person would have a reasonable expectation of privacy that his personal and private conversations conducted out of the presence of others at his place of business are not being monitored by government officials. This conclusion is bolstered by the Supreme Court's decision in Odom v. State, 403 So.2d 936 (Fla. 1981), which held, while making no specific *784 reference to the defendant's home, that the warrantless recording of a conversation between the defendant and another pursuant to the provisions of Section 934.03(2)(c) constituted an unreasonable interception of a private communication in violation of the provisions of Article I, Section 12 of the Florida Constitution.
The recording of a private conversation by one of the parties thereto constitutes an interception and a private person cannot record such a conversation without his conversation partner's permission. State v. Tsavaris, 394 So.2d 418 (Fla. 1981). The same protection prevents police authorities from intercepting private communications without a warrant. However, Section 934.03(2)(c) attempts to authorize a police officer, without a warrant, to intercept a conversation if he secures the permission of one of the parties. In other words the officer is authorized to do what the private party cannot do himself. And, under Section 934.03(2)(c), the officer's authority is unrestricted so long as it is exercised "to obtain evidence of a criminal act." The officer can intercept innocent as well as incriminating conversations based solely on his own judgment that he is doing so to obtain evidence of a criminal act. Normally, the officer would have to secure the permission of an impartial magistrate based upon a showing of probable cause that evidence of a criminal act will be secured by the interception (among other requirements as detailed in Chapter 934), before an interception could be made.
Is this exception to the warrant requirement constitutionally permissible? Well, one could say that a party to a conversation assumes the risk that he may be conversing with a police informant and thereby impliedly waives any privacy claims. Under this view the conversation could be recorded by the conversation partner without any constitutional violation. This is in essence the view taken by the U.S. Supreme Court. See United States v. Caceres, 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979); United States v. White, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971); Lopez v. United States, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963). However, the Florida Supreme Court in Sarmiento specifically rejected this view and instead held that under the provisions of the Florida Constitution which expressly protect private communications, one may assume the risk that his conversation partner may repeat the conversation, but one does not assume the risk, and thereby waive his privacy claims, that the conversation will be recorded or otherwise intercepted. The "waiver" or "assumption of risk" argument has thus been rejected as a rationale for authorizing interceptions of private communications by the police without a warrant under the provisions of the Florida Constitution. If indeed that argument has been rejected then upon what rationale can an exception to the warrant requirement be defended? No other rationale has been suggested other than the arrest warrant analogy involved in Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). I do not believe the holding of Payton v. New York, barring a routine arrest in a suspect's home without a warrant absent exigent circumstances, furnishes any rationale for limiting the expectation of privacy in communications to the home. For one thing, the Florida Supreme Court did not even mention Payton in its Sarmiento opinion. More importantly, however, the Payton case is simply not on point. Obviously under Payton an arrest without a warrant could be made of a suspect in a public telephone booth, but the telephone call itself could not be intercepted without a warrant. The Payton opinion itself noted:
[T]he prohibitions of the [Fourth] amendment have been extended to protect against invasion by electronic eavesdropping of an individual's privacy in a phone booth not owned by him, Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576, even though the earlier law had focused on the physical invasion of the individual's person or property interests in the course of a seizure of tangible objects.
100 S.Ct. 1371 at 1382. Thus, Payton hardly stands for the proposition that an expectation *785 of privacy in communications is limited to the home.[3]
Notwithstanding my difficulty in limiting application of the Sarmiento decision to the home, I cannot ignore the plain language used in the Sarmiento majority opinion in response to the dissenting view that the interceptions in question were lawful:
Our response to this contention is simple; insofar as that statute authorizes the warrantless interception of a private conversation conducted in the home, it is unconstitutional and unenforceable. (Emphasis in original.)
397 So.2d 643 at 645.
NOTES
[1] § 934.03(2)(c) reads:

(c) It is lawful under this chapter for a law enforcement officer or a person acting under the direction of a law enforcement officer to intercept a wire or oral communication when such person is a party to the communication or one of the parties to the communication has given prior consent to such interception and the purpose of such interception is to obtain evidence of a criminal act.
[2] However, see the discussion of Franco in Justice Alderman's dissent in Sarmiento at pages 647-648.
[3] The Supreme Court has now extended the Payton holding to include not only the home of the defendant but also the home of a third party. Steagald v. United States, ___ U.S. ___, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981).