406 So.2d 66 (1981)
Anthony CHIARENZA, Appellant,
v.
STATE of Florida, Appellee.
No. 80-575.
District Court of Appeal of Florida, Fourth District.
November 18, 1981.
Rehearing Denied December 16, 1981.
J. David Bogenschutz of Varon & Stahl, P.A., Hollywood, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Robert L. Bogen, Asst. Atty. Gen., West Palm Beach, for appellee.
HERSEY, Judge.
Appellant was convicted of conspiracy to sell, deliver or possess with intent to sell or deliver over 100 pounds of marijuana. The evidence discloses that he brought together a buyer and seller for which he was to be paid a commission. That evidence consisted in part of tape recordings made by the police by virtue of a transmitter placed in the home of one Alpert, a police informant. Appellant questions the admissibility of those tapes and raises several other issues said to undermine the validity of his conviction. The sole issue of substance on appeal is whether a recording made under police supervision in the home and with the consent of a co-conspirator (other than the defendant) for the purpose of obtaining evidence of a criminal act is admissible.
*67 The warrantless interception of private communications has been the subject of considerable judicial activity in recent times and the rules continue to evolve. The difficulty in each new case results from the fact that a delicate balance must be struck between two competing interests. On the one hand an individual's right to be free from unreasonable searches and seizures and to enjoy his privacy is a constitutionally guaranteed and fundamental expectation of our democratic society. On the other is the right of society, made up of those same individuals to adopt and enforce rules for the preservation of life, liberty and property.
The precise activity with which we are concerned here is concisely defined in Article I, Section 12 of the Florida constitution. "The right of the people to be secure in their persons, houses, papers and effects against ... the unreasonable interception of private communications by any means, shall not be violated."
Amendment IV of the Constitution of the United States, made applicable to the states by the fourteenth amendment, provides similar protection although in different language.
Recent Florida cases make it reasonably clear that activity which is permissible under the federal constitution may well be proscribed by the Florida constitution. See, e.g., State v. Sarmiento, 397 So.2d 643 (Fla. 1981).
It is not essential for determination of the present case that we examine each point of departure between the Federal and Florida standards. Suffice to say that the evidence challenged here would be admissible under federal standards. United States v. White, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971); Hoffa v. United States, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966).
It remains to be determined whether such evidence is rendered inadmissible by Article I, Section 12, of the Florida constitution.
We note at the outset that it is only the unreasonable interception of private communications that is proscribed.
An interception is "unreasonable" unless a warrant has been obtained or unless a constitutionally permissible exception has been created. Tollett v. State, 272 So.2d 490 (Fla. 1973).
A communication is "intercepted" by "the aural acquisition of the contents of any wire or oral communication through the use of any electronic, mechanical, or other device." § 934.02(3), Fla. Stat. (1979). Obviously one party to a two party communication does not "intercept" that communication, he simply receives it. It would seem to follow, then, that one who receives a communication might record it without committing an interception. However, that is not the rule in Florida. State v. Tsavaris, 394 So.2d 418 (Fla. 1981).
Any analysis of the judicial development of the constitutional prohibition against unreasonable interceptions in Florida must go hand in hand with consideration of the statute which specifically prohibits such interceptions and establishes exceptions to the requirement for a warrant.
Prior to 1974, Chapter 934, the Florida Security of Communications Act provided an exception to the requirement for obtaining a warrant where one party to a communication had given consent:
It is not unlawful under this chapter for a person not acting under color of law to intercept a wire or oral communication when such person is a party to the communication or when one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal act.
§ 934.03(2)(d), Fla. Stat. (1973).
Tollett v. State, supra, construed this statute and Article I, Section 12 of the Florida Constitution to permit the introduction into evidence of an intercepted communication where (1) one party consented to the intercept and (2) the consenting party testified at trial that consent had been given. The first holding in Tollett has been modified by amendment to the statute; the second remains viable.
*68 The present requirements of the statute had their genesis in an amendment which became effective October 1, 1974. The provisions of that statute pertinent to our inquiry provide in subsection (2)(a)2:
(c) It is lawful under this chapter for a law enforcement officer or a person acting under the direction of a law enforcement officer to intercept a wire or oral communication when such person is a party to the communication or one of the parties to the communication has given prior consent to such interception and the purpose of such interception is to obtain evidence of a criminal act.
(d) It is lawful under this chapter for a person to intercept a wire or oral communication when all of the parties to the communication have given prior consent to such interception.
The statute therefore basically establishes two categories of exceptions to the warrant requirement (by implication only, since the statute does not expressly speak to the constitutional issues). Those categories are: (1) an interception involving law enforcement officers, requiring the consent only of one party and (2) an interception based upon the consent of all parties.
The Supreme Court has added additional refinements to these exceptions. In State v. Sarmiento, supra, the exception involving law enforcement officers was severely limited. The court, in that case, held that a communication transmitted from the defendant's home by or under the supervision of law enforcement officers and intercepted or received by a witness outside the home will not be admissible in evidence. The court further held that to the extent the statute could be construed to authorize such an interception without a warrant, the statute must succumb to constitutional attack.
Two types of distinctions were at least temporarily rendered relevant by the Sarmiento rule. The first, and most transient, is the necessity to distinguish between the two forms the end product of such an interception might take. As Justice Alderman later pointed out in his dissent in Hoberman v. State, 400 So.2d 758 (Fla. 1981), Sarmiento excludes testimony of a witness who, stationed outside the defendant's home, received, heard and would testify concerning the contents of conversations transmitted from within the defendant's home. A recording of those same transmissions was not necessarily in the same excluded category. In fact, the first district made this very distinction in holding a recording admissible in State v. Scott, 385 So.2d 1044 (Fla. 1st DCA 1980). Even so, the distinction was short-lived. In Hoberman, supra, the Supreme Court determined that such a recording was in the same category as the Sarmiento testimony and was therefore inadmissible.
The second element dealt with in Sarmiento involves the characterization of the geographical location of the intercepting or transmitting device as the defendant's home. So, too, in Hoberman the defendant's home was involved. Justice Alderman's dissents in Sarmiento, Tsavaris and Hoberman analyze the history of and rationale behind the view that constitutional protection should be afforded to persons and not places. Perhaps experience with the new rule will offer guidance as to the relative wisdom of these two opposing views. Certainly Judge Hubbart's sentiments in Sarmiento v. State, 371 So.2d 1047, 1051 (Fla. 3d DCA 1979), quoted with approval in the Supreme Court's per curiam opinion, leave little room for argument by reasonable men:
We are unwilling to impose upon our citizens the risk of assuming that the uninvited ear of the state is an unseen and unknown listener to every private conversation which they have in their homes. That is too much for a proud and free people to tolerate without taking a long step down the totalitarian road. The home is the one place to which we can retreat, relax, and express ourselves as human beings without fear that an official record is being made of what we say by unknown government agents at their unfettered discretion.
It is not impossible, however, to agree with the statement of a fine principle while at the same time disagreeing with the appropriateness of its application to a particular *69 set of facts. It would seem that the "risk" of the uninvited ear is neither increased nor diminished by Sarmiento. The rule simply requires that a warrant be obtained before the ear may legally intrude in this particular fashion. Even without a warrant the ear may intrude in the form of an undercover agent or a confidential informant or any number of persons who are present with the defendant in his home when the conversations take place. They may listen and testify with impunity. But if a transmitter is used to penetrate the walls, then a bystander with a receiver a few feet away may neither testify nor offer into evidence his recording of the conversation. This is said to be for the reason that the defendant, in the sanctity of his home, has a reasonable expectation of privacy vis a vis one transmitter but not vis a vis a roomful of undercover agents. Such a distinction may require the drawing of a line which may be too fine to be seen by ordinary reasonably prudent men.
There is one other factor that may merit concern. To reiterate, Sarmiento distinguishes between transmissions from the defendant's home and those from other locations, protecting only the former from interception by or under the supervision of law enforcement personnel. The inquiry which immediately suggests itself is: when does a home cease to be a home? Conversely, does any building in which a criminal defendant takes up lodging, either on a temporary or on a semi-permanent basis, suddenly become insulated by Sarmiento? According to Sheff v. State, 301 So.2d 13 (Fla. 1st DCA 1974), the rights and privileges guaranteed by the Constitution to occupants of private dwellings must be accorded with equal vigor to transient hotel or motel guests. One supposes that something of the sanctity of the home, whether temporary or permanent, is or should be lost, or at least risked, where a "dwelling" becomes the head office, warehouse and sales outlet for a drug operation. There is no question but that Sarmiento's home was also his business. Perhaps that should make a difference.
In the present case the interception occurred under police supervision in a place other than appellant's home. Neither Sarmiento nor Tsavaris nor Hoberman proscribe the activity which produced the recorded conversations which were admitted into evidence here.
Accordingly, finding no error on that point and determining that the remaining issues raised by appellant are without merit, we affirm.
AFFIRMED.
HURLEY, J., concurs.
ANSTEAD, J., concurs specially with opinion.
ANSTEAD, Judge, concurring specially:
I fully concur in the majority opinion as to all of the issues except that issue involving the admissibility of the tapes. On that issue my views are the same as those expressed in an opinion filed in the case of Morningstar v. State, 405 So.2d 778 (Fla. 4th DCA 1981).