## STATE OF FLORIDA v. CALHOUN
### Case No. 84-1963 CF A 02 "U"
Fifteenth Judicial Circuit, Palm Beach County

September 21, 1984

### APPEARANCES OF COUNSEL

**David Acton,** Assistant State Attorney, for plaintiff.

**Michael Dubiner** for defendant.

### OPINION OF THE COURT

CARL H. HARPER, Circuit Judge.

The defendant filed his Amended Motion to Suppress Statements, Admissions and Confessions on August 30, 1984. The State filed its Answer thereto on September 6, 1984. The matter came on for an evidentiary hearing on September 6, 1984. The court reserved ruling for entry of this written order. Based on the evidence presented, after due consideration of the legal authorities cited by the parties in support of and in opposition to the motion and having heard the arguments of respective counsel, the defendant's Amended Motion to Suppress Statements, Admissions and Confessions is granted. Therefore, the

videotaped conversations between this defendant and his brother, McCall Calhoun, surreptitiously recorded on March 22, 1984 by agents of the Palm Beach County Sheriff's Department shall not be admitted in evidence, over objection, in the State's case in chief at trial.

At the outset, it should be pointed out that the State stipulated into the record that it would not attempt to offer into evidence in its case in chief at trial those statements made by this defendant subsequent to the above referred to videotape recording. Therefore, this order does not deal with the admissibility of those statements.

## FINDINGS OF FACT

On March 21, 1984, this defendant became a suspect in the murder and robbery charged in this case through information given by a county jail inmate named Rockwell. At that time, the defendant was already confined in the Palm Beach County Jail awaiting trial on an unrelated attempted first-degree murder charge in case number 84-1593 CF. He had been appointed a public defender at his first appearance hearing in that case on March 12, 1984. The information in that case was not filed until March 29, 1984.

On March 22, 1984, the defendant was taken from his cell at the jail to another building where he was placed in an interview room equipped with a videotape camera that was concealed above the ceiling. The hidden camera had been placed there some two months earlier at the suggestion of or on the advice of Assistant State Attorney Ann Vitunac, according to the testimony of Detective John Kianka. Detective William Springer informed the defendant of his Miranda rights ostensibly preparatory to discussing a pending, unrelated robbery charge. The defendant was not informed that he was a suspect in the instant charges. However, the defendant asked to speak with his brother, McCall Calhoun (who was also confined in the county jail on unrelated charges), before making a statement. Thereupon, McCall Calhoun was placed in the interview room for a private conversation with the defendant. Detective Springer and others monitored the "private" conversation from outside the room, but did not videotape the conversation. Needless to say, neither brother was aware that their conversation was being monitored and neither was aware of the concealed videotape camera, nor had either consented thereto. After about five minutes, Springer terminated their conversation by removing McCall Calhoun to a nearby "holding cell". Springer then entered the interview room and again gave the defendant his Miranda rights. The defendant invoked his right to remain silent and asked to see his public defender. Accordingly, the attempted interview was terminated and Springer left the room. The defendant remained in the room alone.

4

Springer and other officers discussed their strategy for about "two minutes". At the suggestion of Deputy Ugliano, McCall Calhoun was again placed in the interview room with the defendant so that their conversation could be monitored "for investigative purposes, not just for security", according to the testimony of Springer. That conversation lasted about fifteen minutes and was videotaped, both audio and visual. Needless to say, there was no court order authorizing the intercept and neither brother had consented thereto. The videotape was placed in evidence as State's exhibit 1 and played for the court. Most of the conversation related to matters not relevant to this case. Those irrelevant matters would not be admissible in the trial of this case in any event over objection because the prejudicial effect outweighs any possible relevance. As far as this court is concerned, the only relevant statement made by the defendant was his statement that "they can't prove the murder of that dude on me because it was a different gun, different bullet", or words of like import. The taped conversation ended abruptly when the defendant happened to look up toward the ceiling and noticed the camera behind the plexiglass. Thereafter, the videotape was played to the defendant by Detective Kianka. After viewing the tape, the defendant made subsequent statements which, as noted above, will not be used by the State in its case in chief in the trial of the instant case.

## CONCLUSIONS OF LAW

The State has failed in its burden to demonstrate the admissibility of the videotape recording or the above quoted relevant portion thereof. An interception is per se unreasonable unless a warrant has been obtained or unless a constitutionally permissible exception has been shown by the State. *Tollett v. State,* 272 So.2d 490 (Fla. 1973) and *Chiarenza v. State,* 406 So.2d 66 (4th DCA 1981).

Wiretapping and other forms of eavesdropping have historically been repugnant to the American people who place a high value on the right of privacy. The right of privacy is guaranteed to all people in the Fourth Amendment to the United States Constitution, as well as Article I, sections 12 and 13 of the Florida Constitution. In fact, Article I, section 12 expressly provides:

> *"The right of the people to be secure* in their persons, houses, papers and effects against unreasonable searches and seizures, and *against the unreasonable interception of private communications by any means, shall not be violated"* . . . (emphasis mine)

Furthermore, section 934.03, Florida Statutes, makes it unlawful for

any person (including law enforcement officers) to willfully intercept, use or disclose any wire or oral communication, or to endeavor to do so or procure another to do so, punishable by five years' imprisonment in the State Prison, with certain exceptions not applicable under the evidence herein. The consent exception in the Florida statutes is more restrictive than its federal counterpart. As noted above, there was no court order authorizing this intercept and neither conversant had knowledge of or had consented to the intercept. The statutes protect the conversants, not the party who makes the illegal intercept. *State v. News-Press Publishing Company,* 338 So.2d 1313 (2d DCA 1976) and *State v. Walls,* 356 So.2d 294 (Fla. 1978). In addition to the felony sanctions, section 934.06 expressly provides that no part of the contents of illegally intercepted communications and no evidence derived therefrom may be received in evidence in any proceeding. See for example *Horn v. State,* 298 So.2d 194 (1st DCA 1974), and *State v. Walls,* supra.

The Fourth Amendment guarantees to protect people, not places, and, more particularly, it protects people from unreasonable government intrusion into their legitimate expectations of privacy. *Katz v. United States,* 88 S.Ct. 507 (1967) and *United States v. Chadwick,* 97 S.Ct. 2476 (1977). Obviously, the defendant did not have a reasonable expectation of privacy in the interview room itself under the search provisions of either Constitution. Nevertheless, the defendant did have a reasonable expectation that his conversation with his brother was secure and private, guaranteed to him by the Florida Constitution and statutes cited above. The emphasized portion of Article 1, section 12 quoted above guarantees against unreasonable interceptions of private communications regardless of where they occur. In construing Article 1, section 12, as amended in 1968, the Florida Supreme Court stated:

> "In Florida, at least, the protection of privacy in the area of communications is constitutionally mandated in express language . . .

> "Time and again, courts have held individuals' rights cannot be sacrificed to enable officers to conduct 'fishing expeditions' . . .

> "We are concerned about such activity. If it is uncontrolled, it has no place in a free state. *The right to freely enter into private conversations without fear of having those conversations overheard and recorded is an important one."* (emphasis mine) *Tollett v. State,* 272 So.2d 490, 493–494 (Fla. 1973).

See also *Morningstar v. State,* 405 So.2d 778 (4th DCA 1981), decision approved in 428 So.2d 220 (Fla. 1982), certiorari denied in 104 S.Ct.

86. It is the private conversation that is protected! The fact that the conversation took place in an interview room of the Detective Bureau does not diminish that protection. The State contends that the defendant did not have a reasonable expectation of privacy in the area where the conversation took place (the interview room), and that the intercept was lawfully permitted as a security measure, citing *Brown v. State* 349 So.2d 1196 (4th DCA 1977) and its companion case, *Stanley v. State,* 350 So.2d 475 (4th DCA 1977) habeas corpus denied in *Stanley v. Wainwright,* 604 F.2d 379 (5th Cir.1979); *Hyland v. Wainwright,* 356 So.2d 14 (4th DCA 1977); and *DiGuilio v. State,* 451 So.2d 487 (5th DCA 1984). However, none of those controlling appellate court decisions discussed the Article I, sections 12 and 13, protections of the Florida Constitution cited above, but were decided on Fourth and Fifth Amendment principles.

With all due respect to the appellate courts, the controlling facts of the instant case are materially distinguishable from those in the cases relied upon by the State. For instance, those cases all involved the surreptitious tape recording, without consent or court order, of conversations between co-defendants who were confined in the back seat of a police car. This defendant (unlike those in the cases cited by the State) had expressly invoked his Fifth Amendment right to remain silent and his Sixth Amendment right to counsel. Instead of providing the defendant with an attorney, the Sheriff's agents took it upon themselves to send the defendant's brother, McCall Calhoun, into the interview room. In doing so, it was reasonably predictable and foreseeable that the two brothers would freely converse with each other about their respective cases, reasonably believing that their conversation was private. The law anticipates and recognizes that close relatives will aid one another in a time of strife and need, even if illegal. For example, a brother is immune from prosecution as an accessory after the fact to a felony committed by his brother. See section 777.03, Florida Statutes. In effect, McCall Calhoun bacame the unwitting agent of law enforcement and through him the Sheriff's agents vicariously initiated and participated in an "interrogation" of the defendant who had just invoked his constitutional right to remain silent and to counsel. The Sheriff's agents were constructively present in the interview room via the concealed videotape camera. In doing so, the Sheriff's agents were able to accomplish indirectly what they could not legally accomplish directly. The State's contention that the intercept was justified as a security measure is a subterfuge. The State offered no proof that the brothers were armed or that weapons were available to them in the interview room, or that they could readily escape from the room.

7

Based on the totality of circumstances, the defendant's Amended Motion to Suppress Statements, Admissions and Confessions is granted on the following severable grounds:

1. First and foremost, the videotaping was an unreasonable interception of the defendant's private communication with his brother in violation of Article I, sections 12 and 13, of the Florida Constitution.

2. The videotaping was an unlawful interception of an oral communication in violation of section 934.03, Florida Statutes, and must be excluded from evidence pursuant to section 934.06. Florida Statutes.

3. The videotape was obtained in violation of the defendant's Fifth Amendment right to remain silent and must be suppressed pursuant to *Miranda v. Arizona,* 384 U.S. 436 (1966).

4. The videotape was obtained in violation of the defendant's Sixth Amendment right to counsel and must be suppressed pursuant to *Edwards v. Arizona,* 101 S.Ct. 1880 (1981).

In view of the above rulings, it is not necessary for this court to consider the defendant's contention that the videotape intercept also violated the principles enunciated in *Massiah v. United States,* 84 S.Ct. 1199 and *Dismukes v. State,* 324 So.2d 201 (1st DCA 1975).

The court frankly acknowledges its uncertainty concerning the rulings made herein in construing Article I, section 12 because of the 1982 amendment thereto requiring a construction in conformity with the Fourth Amendment of the United States Constitution as interpreted by the United States Supreme Court. The continued viability of the Florida appellate court decisions relied upon by this court is open to serious question. See for example *State v. Ridenour,* 453 So.2d 193 (3rd DCA 1984). Personally, I share Judge Hubbart's regrets expressed therein because the amendment exacerbates the exclusionary rule quagmire.

In conclusion, it is doubtful that this suppression order will have any disastrous effect on the State's case herein. Surely, the State's case does not stand or fall on the admissibility of the defendant's damaging statement that "they can't prove the murder of that dude on me because it was a different gun, different bullet". Nevertheless, this court anticipates and would welcome an appeal by the State from this order because of the possible adverse effect this order might have on numerous other cases against this defendant pending before another judge. Furthermore, should the State intend to continue the clandestine use of the concealed videotape camera in the future, an appellate determination of the propriety thereof would be helpful to all concerned.